Edwin A. WALKER, Appellant,

v.

**GENERAL FEATURES CORPORATION,**
Appellee.

No. 7261.

United States Court of Appeals
Tenth Circuit.

June 13, 1963.

Clyde J. Watts, of Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for appellant.

Gordon F. Rainey, of Rainey, Flynn & Welch, Oklahoma City, Okl., for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This diversity action was commenced in the court below by plaintiff-appellant to recover damages from defendant-ap-

pellee for distributing an alleged libelous article, which was published in an Oklahoma newspaper. The appeal is from an order sustaining appellee's objection to jurisdiction and motion to quash the service of summons and to dismiss the action on the ground that it was not "doing business" within the State of Oklahoma in such a manner as to make it amenable to service of process under the Oklahoma substituted service statute, 18 Okl.Stat.Ann. § 1.204a.

There is no dispute in the facts as established by affidavits and oral testimony presented in appellee's behalf. The claim of libel is based upon a syndicated article or column which appeared in the February 15, 1962, edition of the Oklahoma City Times. This article was written by Sidney J. Harris, a syndicated columnist writing under the trademark "Strictly Personal", and was distributed or syndicated to the Oklahoma City Times by the appellee, General Features Corporation. It is not necessary for purposes of this appeal to determine whether the article was libelous as claimed by appellant or to even discuss its contents.

Appellee is engaged in the newspaper feature business and as such distributes or syndicates articles, comic strips, features and other materials of a similar nature to various newspapers throughout the United States for publication by them. It is a New York Corporation with its principal place of business and only office located at 250 Park Avenue, New York City, New York. The corporation is not authorized to do business in Oklahoma, has never applied for such authority and its name is not, and has never been, listed in any telephone, business, city or other directory, printed or distributed in Oklahoma. The corporation has never leased, owned, possessed or otherwise controlled any property within the State of Oklahoma and none of its officers, agents or employees have ever resided within that state. Its only contact with the State of Oklahoma, aside from distributing the column in question, occurred on March 13, 1961, when one of its salesmen made a brief stop in Tulsa and another brief stop in Oklahoma City. This salesman probably called upon the Managing Editor of the Oklahoma City Times on this occasion but appellee did not receive any business as a result of the trip and the salesman did not stay over night in Oklahoma.

The writer of the column, Harris, is and has been for many years, a reporter and employee of The Chicago Daily News, which is also the owner of the registered trademark under which Harris writes. Harris' column is the exclusive property of The Chicago Daily News and it was distributed by appellee under a contract entered into by appellee and The Chicago Daily News on April 29, 1952. The Chicago Daily News cancelled this contract, effective April 30, 1962, and since that time the Harris column has been distributed to the Oklahoma newspaper by The Chicago Sun Times News.

During the effective period of the contract when the column was being distributed by appellee, it was furnished with the column by The Chicago Daily News and it then mailed the column to the various newspapers. In doing this, appellee merely acted as a collecting and distributing agency and, as provided in the contract, received 50 per cent of the amount paid by the newspapers to which it distributed the column. Appellee has never had any business dealings direct with Harris and he has never been its employee. All of appellee's arrangements for distribution of the Harris column were made with The Chicago Daily News and appellee did not exercise any editorial judgment over the contents of the column.

The arrangements for distributing the Harris column to the Oklahoma City Times were made by its Managing Editor and appellee's President by telephone and correspondence. Pursuant to these arrangements, appellee mailed the column in question to the Oklahoma newspaper in the regular manner by which appellee distributed all newspaper features. Appellee's representatives did not have any knowledge of the contents of

the article until the alleged libelous statements were called to their attention by a letter from Walker's attorney. Appellee sent this letter to the Editor of The Chicago Daily News and disclaimed any responsibility in the matter. Walker thereafter commenced this action.

Inasmuch as appellee did not have a registered service agent in the state, service of process was made upon it by serving the Secretary of State under the Oklahoma statute providing for such service upon a foreign corporation in these circumstances.[1] Appellee's objection to jurisdiction and motion to dismiss because of the alleged insufficiency of such service was sustained and this appeal resulted.

At the outset, it should be pointed out that this case, unlike Houston Fearless Corporation v. Teter, 10 Cir., 318 F.2d 822, does not involve any question concerning venue under the federal venue statute,[2] and no contention is made here that the Oklahoma substituted service statute is in violation of due process under the Fourteenth Amendment to the Constitution of the United States. The issue before us is restricted to the question of whether, under the facts of record, appellee was "doing business" in the State of Oklahoma within the meaning of that term as it is used in the state statute. That question must, of course, be resolved by application of state or local law rather than federal law. Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179, cert. denied, 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362.

In the Steinway case, this court was called upon to determine what constitutes "doing business" within the meaning of the Oklahoma statute involved here. Judge Murrah pointed out in his opinion that "the Oklahoma courts, by a process of inclusion and exclusion, have given the term [doing business] the same meaning and content generally accorded it by federal and other decisions, which have construed it with an eye to due process. * * *", and then went on to follow the test laid down in International Shoe Co. v. Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, saying at 179 F.2d pages 682 and 683:

"While leaving every case to its own facts, it is generally understood that to constitute 'engaging in or transacting business' in a state, so as to be found or present there for purposes of personal service, a nonresident corporation's activity there must be 'substantial', 'continuous', and 'regular', as distinguished from 'casual', 'single', or 'isolated' acts. * * *"

The Supreme Court of Oklahoma has itself generally adopted the test of International Shoe as to what constitutes "doing business". See, e. g., S. Howes Co. v. W. P. Milling Co., Okl., 277 P.2d 655, appeal dismissed, 348 U.S. 983, 75 S.Ct. 575, 99 L.Ed. 765; Wills v. National Mineral Co., 176 Okl. 193, 55 P.2d 449, 452. In its latest pronouncement on the subject, Fawcett Publications, Inc. v. Morris, Okl., 377 P.2d 42, petition for cert. filed, 31 U.S.L. Week 3235 (U.S. Jan. 11, 1963) (No. 741), the Oklahoma Supreme Court adhered to the rule set forth in Wills v. National Mineral Co., supra, that:

"Doing business involves not only ownership, possession or control of

---

1. 18 Okl.Stat.Ann. § 1.204a, provides as follows:

"In all cases where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this state or having done business in this state or while a foreign corporation was doing business within this state and such foreign corporation has no registered agent in this state upon whom service of summons or other process may be had, an action

may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in the county where the Secretary of State is served or elsewhere in the state."

2. 28 U.S.C. § 1391(c).

property, but also such functions as dealing with others in reference thereto, the exercise of discretion, the making of business decisions, the execution of contracts, the marketing of products by advertising and solicitation, collecting accounts, and kindred functions. Wherever an important combination of these functions is being performed, it is the doing of business at the place of such performance." (377 P.2d at pages 45 and 46).

Under that test, we do not believe it can be concluded that appellee was "doing business" in the State of Oklahoma. The record discloses that appellee does not own, possess or control any property within that state and it has not performed such functions as the dealing with others in reference thereto, the making of business decisions, the execution of contracts, the marketing of products by advertising and soliciting, the collecting of accounts or other kindred functions in the state. Appellee's activities in the State of Oklahoma, if they can be called that, were confined to the distribution of the column in question to the Oklahoma City Times and one trip by one of its salesmen. But, the salesman was in the state only briefly and then not for the purpose of soliciting sales of such column. Under these circumstances, it certainly cannot be concluded that appellee's activity in the state was "substantial", "continuous", and "regular", as distinguished from "casual", "single" or "isolated" acts.

It is true that the Oklahoma Supreme Court has recognized and followed the modern trend of broadening the application of the term "doing business" so as to hold foreign corporations within strict limits of accountability in local courts. McClarin v. Boeing Airplane Company, Okl., 340 P.2d 455. And, see Abel v. Albina Engine & Machine Works, 10 Cir., 284 F.2d 510, 512. But we are unable to find any case which interprets the term broad enough to permit, much less compel, the conclusion that appellee was "doing business" in Oklahoma in this case. Nor does the recent decision by this court in the case of Curtis Publishing Company v. Cassel, 10 Cir., 302 F.2d 132, involving the interpretation of a similar Kansas statute, require a different conclusion. The cases are easily distinguishable on the facts. Likewise, we should observe that the facts in this case, pertaining to "doing business", fall far short of those in Houston Fearless Corporation v. Teter, supra, decided by this court during this term.

We hold that under the facts of this case appellee was not "doing business" in the State of Oklahoma and the order of the lower court is therefore affirmed.