The CITY OF NEW YORK, Plaintiff,

v.

CONTINENTAL VITAMIN CORP., Defendant.

No. 65 Civ. 3892.

United States District Court
S. D. New York.
May 24, 1966.

J. Lee Rankin, Corporation Counsel, New York City, for plaintiff; Morgan N. Lipton, Manuel Herman, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, by Bruce Hecker, New York City, for defendant; Hellring, Lindeman & Landau, Newark, N. J., by David R. Simon, Newark, N. J., of counsel.

McGOHEY, District Judge.

Continental Vitamin Corporation (Continental) is a New Jersey corporation. It is not licensed to do business and has no office in New York. It has moved to dismiss the complaint in this breach of contract action, for lack of in personam jurisdiction; or, in lieu thereof, to quash the summons served upon its president in New Jersey. The City of New York (City) contends its claim arose out of Continental's transaction of business in New York and therefore falls within the ambit of section 302(a) (1) of New York's Civil Practice Law and Rules (CPLR); and that, accordingly, in personam jurisdiction of Continental was properly obtained by service of a summons pursuant to CPLR 313 and 311(1).[1]

1. The affidavit of the Corporation Counsel as to matter appearing in the records of the City, together with the photostatic copies of portions of those records, affixed as exhibits thereto, is, contrary to Continental's contention, sufficient. Cf. United States v. Montreal Trust Co., 2 Cir., 358 F.2d 239 (2 Cir. 1965).

The regularity of the service is not challenged.

In late 1963 Continental, wishing to be placed upon the City's "bidders' list" as a drug supplier, submitted a written application to the City. In April 1965 the City advertised for bids on a contract for the purchase of certain drugs, and mailed "requests for price quotations" to prospective bidders. Continental received one of the requests at its New Jersey office, completed it there and mailed it back to the City. On April 30, 1965, the bids were opened by the City and the contract was awarded to Continental, the lowest bidder. On June 8, 1965, a telephone order to Continental was placed by an employee of the City and written confirmation of this purchase was mailed on June 15 to Continental in New Jersey. The order called for the delivery of 5,000 bottles of drugs on June 11, 1965, and an additional 10,000 on June 28, 1965. Shipments were received in New York on June 14 and 28, and July 2 and 7 of that year. On or about July 13, 1965, the City's comptroller rejected the shipments for failure to comply with the contract specifications. Subsequently, pursuant to the terms of the contract, the City purchased similar goods on the market at a cost of $13,203.08 in excess of the contract price, and now seeks to recover that amount.

Rule 4(e) of the Federal Rules of Civil Procedure provides that service may be made upon a party not an inhabitant or found within the state "under the circumstances and in the manner prescribed by * * *" state law. CPLR section 302(a) (1) provides that service may be made without the state upon a nonresident if he "transacts any business within the state" out of which the cause of action arises. New York's highest court in Longines Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,[2] has construed that provision to require "a showing of * * * purposeful acts * * * in this State in relation to the contract, albeit preliminary or subsequent to its execution."[3] The New York Court of Appeals has made it clear, however, that the mere shipment of goods, F.O.B. point of shipment, into New York does not constitute a transaction of business there.[4] What activities within the state will be sufficient to constitute transacting business has been left for determination on a case to case basis.[5]

In Singer v. Walker, one of the trilogy of cases decided by the Longines court, the contact of that defendant with this state was found sufficient to support the exercise of jurisdiction under CPLR 302 (a) (1). The plaintiff there sought to recover for a personal injury sustained outside New York by the alleged malfunction there of a hammer manufactured out of New York. The defendant, an Illinois corporation not doing business in New York, was personally served in Illinois. The court, noting that the defendant "shipped quantities of its product into this State as a result of solicitation here by a local manufacturer's representative and through catalogues and advertisements and that the injury causing hammer, purchased from a New York dealer, was one of such products * * *," held that the statutory requisite was met.[6] The court's reference to the fact that "a local manufacturer's representative" was used for the solicitation of business in New York, is reminiscent of the suggestion in some of the earlier cases that physical presence was a prime factor for determining whether the statute

2. 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E. 2d 68 (1965).

3. Id. at 457, 261 N.Y.S.2d at 18, 209 N.E. 2d at 78. See Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965).

4. Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S. 2d 900 (1966). See Agrashell, Inc. v. Bernard Sirotta Co., supra.

5. See 15 N.Y.2d at 456–458, 261 N.Y.S.2d at 18–19, 209 N.E.2d 68.

6. Id. at 466–467, 261 N.Y.S.2d at 26–27, 209 N.E.2d 68.

would apply.[7] There is no contention here that Continental physically conducted any business in New York. There is, however, some authority that physical presence was not considered crucial by the New York Court of Appeals in arriving at the decision in Singer [8] and in any event, later cases indicate that its absence is not fatal and may be outweighed by other purposeful contact by the defendant with the forum.[9]

The City makes no contention that Continental has shipped substantial quantities of its products into New York in the past. Nor does it claim that Continental carried on a continuous campaign of advertising in this state. However, Continental did maintain a telephone listing and long-line number in New York City, indicating that this was not its sole business venture in this state.[10] More important, Continental actively sought the business of the City by filling out an application to be placed upon its "bidders' list." [11] Upon acceptance of that application by the City, Continental became entitled to the protection of New York's laws regulating the award of municipal contracts.[12] And, by submitting a completed price quotation form, Continental invoked the benefit and protection of those laws.[13] The claim of the City was occasioned by a shipment of defective goods into New York pursuant to a contract awarded in compliance with those laws.

The foregoing connections of Continental with New York are far more extensive than those found sufficient for the application of 302(a) (1) in recent

7. See Greenberg v. R.S.P. Realty Corp., 22 A.D.2d 690, 253 N.Y.S.2d 344 (2d Dept. 1964); Old Westbury Golf & Country Club, Inc. v. Mitchell, 44 Misc.2d 687, 254 N.Y.S. 679 (Sup.Ct.Nassau Co.1964); Muraco v. Ferentino, 42 Misc.2d 104, 247 N.Y.S.2d 598 (Sup.Ct.Onon.Co.1964). See also A. Millner Co. v. Noudar L.D.A., 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dept.1966). Compare, Iroquois Gas Co. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sup.Ct.Erie Co.1964).

8. McLaughlin, Practice Commentary, McKinney's CPLR § 302 (1965 Supp.) at p. 47.

9. See G. Benedict Corp. v. Epstein, 47 Misc. 2d 316, 262 N.Y.S.2d 726 (Sup.Ct.Albany Co.1965); Mediclean Corp. of New York v. Mediclean Inc., N.Y.L.J., July 9, 1965, p. 10; La Rosa v. Levine, 47 Misc.2d 1025, 263 N.Y.S.2d 668, 669 (D.C.Nassau Co.1965), aff'd per curiam 49 Misc.2d 932, 268 N.Y.S.2d 737 (2d Dept.1966); Elkan v. Clyde L. Hindman Agency Co., 46 Misc.2d 403, 259 N.Y.S.2d 563 (D.C. Nassau Co.1965). Cf. Banco Espanol De Credito v. DuPont, 24 A.D.2d 445, 261 N.Y.S.2d 233 (1st Dept.1965).

10. Although, as it is pointed out in Greenberg v. R.S.P. Realty Co., supra, a New York telephone listing is not conclusive of the applicability of 302(a) (1), it is certainly a factor to be considered.

11. Continental urges that the application to be placed upon the "bidders' list" be treated as a nullity because a certificate of authorization to do business in New York was not filed, as required, with the application. As Continental has already been awarded a contract, the prerequisite for which was the filing of the application, i. e., has accepted the benefit of the filing, it will not now be heard to attack its validity. Since there is sufficient independent basis for the predication of in personam jurisdiction, the effect of an attempt to circumvent the requirement of filing a certificate of authorization need not be discussed. See N.Y.General Corporation Law, McKinney's Consol.Laws, c. 235, §§ 212, 210; Jackson v. National Grange Mutual Liability Co., 274 App.Div. 330, 83 N.Y.S.2d 602, 606 (3d Dept.1948).

12. See e. g. N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 1857 (misdemeanor for a public employee or officer to wilfully omit to perform a duty), § 1868 (misdemeanor for a public officer to be interested in a public contract); N.Y. City Charter § 343 (contract must be given to the lowest responsible bidder; if not, a detailed report of the reasons for not doing so must be submitted by the agency).

13. The argument in defendant's brief devoted to where the contract was "made" is specious. Even if the contract were "made" outside New York, this factor would not be controlling. 15 N.Y.2d at 456–457, 261 N.Y.S.2d at 18, 209 N.E.2d 68.

New York lower court decisions.[14] The facts here show a presence in New York as purposeful as that of the defendant in Singer v. Walker.[15] In addition, Continental has purposefully availed itself of the protection of the laws of New York.

The defendant's motion is denied.

So ordered.

---

14. See note 9 supra. Cf. Ellis v. Smith Transfer Corp., 24 A.D.2d 871, 264 N.Y.S. 2d 414 (2d Dept.1965).

