**MARIVAL, INC.**

v.

**PLANES, INC., a corporation, and Larry Block, an individual, Defendants and Third-Party Plaintiffs,**

v.

**UNITED STATES of America and Tampa Air Center, Inc., Third-Party Defendants.**

No. 12189.

United States District Court
N. D. Georgia,
Atlanta Division.

June 26, 1969.

Sloane, Hockett & Iverson, Des Moines, Iowa, for plaintiffs.

Stokes & Manning (Joseph R. Manning), Atlanta, Ga., for defendants.

Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for the United States.

Frank B. Hamilton, Jr. and/or Michael Sierra Hardee, Ott & Hamilton, Tampa, Fla., for Tampa Air Center.

## ORDER

EDENFIELD, District Judge.

This case is before us on a motion to dismiss by the third-party defendant Tampa Air Center, Inc., for lack of

proper venue and for absence of in personam jurisdiction. We do not reach the venue question because of our decision that, on the present record, in personam jurisdiction is absent.

This case was originally brought in state court and was removed by defendants to this court on the grounds of diversity jurisdiction. As a preliminary matter, we question our jurisdiction over this case. Plaintiff corporation is a citizen of Iowa and defendants are Georgia residents. Yet, 28 U.S.C. § 1441(b) specifically states that:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action* [diversity, as in the instant case] *shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."* [Emphasis added.]

 Defendants, being residents of the State—Georgia—in which the action is brought, would seem improper parties to secure removal. Normally, a federal district court in this situation would simply remand the case to state court. However, the plaintiff has not questioned removal to federal court, nor does it appear it will in the future.[1] It is, of course, hornbook law that subject matter jurisdiction cannot be waived and may be challenged at any point. Nor can the federal courts permit the parties by agreement, whether formal or informal, to confer subject matter jurisdiction on the court. If subject matter jurisdiction is absent, the court must dismiss the case, on its own motion if necessary. However, it is equally well established that plaintiff may waive objection to a non-removable action or an action improperly removed, if the federal court

would have had—as here—jurisdiction over the matter if it had been initially brought there. Monroe v. United Carbon Co., 196 F.2d 455 (5th Cir., 1952), Bailey v. Texas, Co., 47 F.2d 153 (2d Cir., 1931); Donahue v. Warner Bros. Pictures, 194 F.2d 6 (10th Cir., 1952); Chevrier v. Metropolitan Opera Ass'n., 113 F.Supp. 109 (S.D.N.Y., 1953). As one court put it:

"* * * [T]here is persuasive authority tending to support a view that jurisdiction will be retained where, as here, although the case was not technically removable under the statute, the court yet had jurisdiction over the subject-matter of the controversy, and the parties had fully consented to the federal jurisdiction and acted thereunder." Handley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435, 437 (6th Cir., 1924).

Professor Moore upholds this view, stating that:

"* * * [A]n irregularity in removal is waivable and, if waived, a federal court has power to proceed with a removed case that is within its original jurisdiction but is not one subject to removal, as where there is diversity but the defendant is a citizen of the state in which the action is brought. * * *" 1A Moore, Federal Practice, ¶ 0.157[11] at 356 (2d ed.).

We do not interpret this authority as requiring a federal district court to assume jurisdiction, but only as estopping plaintiff from challenging removal jurisdiction after a certain point in time. However, in the instant case, we will maintain jurisdiction, in the light of plaintiff's waiver, since the case has proceeded well past the point of initial removal.

We now proceed to Tampa's motion to dismiss, as to which the facts in this case have particular importance. Defendant Block's unchallenged affidavit gives the most complete account of the facts available, although it is unfortu-

---

1. Defendants' attorney has informed the court that plaintiff has acquiesced in the removal proceedings.

nately sketchy. On or about April 15, 1967, Mr. Block, President of defendant Planes, Inc., received a long distance telephone call in Atlanta from Mr. Frank Fallon, Vice President and General Manager of Tampa Air Center, inquiring about the purchase of an Aero Commander airplane defendant had for sale. Mr. Fallon expressed a desire to trade their Cessna 310–D for defendant's Aero Commander, but no other negotiations transpired. It was agreed that Mr. Block would fly the Aero Commander to Tallahassee, Florida, for Mr. Fallon's inspection and approval and that Mr. Fallon would have the Cessna 310–D there for defendant's inspection. Upon their meeting in Florida, it was agreed that Tampa would buy the Aero Commander in return for its Cessna 310–D, and for its Cessna 172, which was not present for inspection. While defendant states that the trade depended upon defendant's subsequently inspecting the Cessna 172 in Atlanta, on April 20, 1967, the Cessna 310–D and Aero Commander were exchanged in Florida in the initial meeting. As Mr. Block states in his affidavit, "on or about the 20th day of April, 1967, he [Block] returned to Atlanta, Georgia, in the said Cessna 310–D and Mr. Fallon returned in the said Aero Commander." Pursuant to their agreement in Florida, an employee of Tampa, Mr. Dale Quigley, flew the Cessna 172 to Atlanta, and upon satisfactory inspection, Block gave Quigley $500, payable to Tampa, finalizing the agreement.

■ Tampa's motion to quash service of process for lack of in personam jurisdiction depends upon the statutory and constitutional reach of Georgia Code § 24–113.1, the Georgia "long-arm" statute. In this diversity case, § 24–113.1, dealing with amenability of nonresident persons, such as Tampa, to personal jurisdiction in Georgia, is controlling. It is now clear, after some controversy, *see*, *e.g.*, Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir., 1960), that Federal Rules 4(d) (3), (7) do not establish a federal standard for amenability of a

corporation to service of process, and that in diversity cases, state law must govern. Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir., 1963); Jennings v. McCall Corp., 320 F.2d 64 (8th Cir., 1963); Walker v. General Features Corp., 319 F.2d 583 (10th Cir., 1963); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir., 1963). *See, also,* Kaplan, Federal Rules Amendments, 77 Harv.L.Rev. 601, 629–632 (1964). Georgia Code § 24–113.1 provides:

> "Personal jurisdiction over nonresidents of State.—A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to cause of action arising from any of the acts, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he
>
> "(a) Transacts any business within this State; or
>
> "(b) Commits a tortious act within this State, except as to a cause of action for defamation of character arising from the act; or
>
> "(c) Owns, uses, or possesses any real property situated within this State."

In the main action, plaintiff has sued defendant for damages arising from the alleged unairworthy condition of the Cessna 310–D, which defendants sold to plaintiff in April of 1968. Plaintiff bases its suit on fraudulent misrepresentation, and breach of express and implied warranties. Defendants' third-party action against Tampa alleges breach of express and implied warranties on the Cessna 310–D, initially sold to defendants by Tampa. Defendants base their opposition to Tampa's motion to dismiss on the fact that Tampa transacted business in Georgia as to the Cessna 310–D, which is the subject matter of their third-party suit. The ultimate question is whether Tampa's activities constitute the transaction of any business within Georgia.

Generally in long-arm cases, the court must decide if the activities in question fall within the scope of the state statute, and, if so, whether the due process clause of the Fourteenth Amendment is satisfied by an inclusive construction. Our task in the instant case is made easier by the fact that, absent state cases on this subject, we hold the Georgia long-arm statute to be coterminous with the due process clause. The broad language of the Georgia statute, expanding notions of jurisdiction, and the experience in other jurisdictions with similar statutes, indicates, that an expansive reading should be given to § 24–113.1. *See, e. g.*, Buckley v. New York Times Co., 338 F.2d 470, 472–473 (5th Cir. 1964); Orton v. Woods Oil & Gas Co., 249 F.2d 198, 200, 202 (7th Cir., 1957), construing the Illinois long-arm statute, Ill.Rev.Stat.1955, §§ 16, 17, which is almost identical to Georgia's statute; Green v. Robertshaw-Fulton Controls Co., 204 F.Supp. 117, 128–129 (S.D.Ind., 1962); McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957). Thus, in the instant case, Tampa would be amenable to this court's jurisdiction under the long-arm statute if its activities in Georgia are sufficient to meet applicable constitutional standards.

Constitutional standards for in personam jurisdiction over nonresident corporations have undergone a radical mutation since the day when corporations were thought to have no existence outside their state of incorporation. Bank of Augusta v. Earle, 13 Pet. 519, 38 U.S. 519, 10 L.Ed. 274 (1839). Absent a personal appearance or personal service of process in the forum state, corporations could not be sued outside the state of their legal birth. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). With the growth of modern corporate entities and the expansion of their multi-state business, fictions were created to permit service of process outside the boundaries of their incorporation. Fictional tests such as "implied consent" to suit, Lafayette Ins. Co. v. French, 18 How. 404, 59 U.S. 404, 15 L.Ed. 451 (1856); Ex parte Schollenberger, 96 U.S. 369, 24 L.Ed. 853 (1877); corporate "presence", Philadelphia & Reading Ry. v. McKibbin, 243 U.S. 264, 265, 37 S.Ct. 280, 61 L.Ed. 710 (1917); and "doing business", 2 Moore, supra, ¶ 4.25[2.–1], at 1150, were developed to justify jurisdiction in the forum state. These fictions were happily laid to rest in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the "minimum contacts" test established, under which personal jurisdiction could be secured over nonresident corporations if there were "certain minimum contacts with it [the forum state, in our case Georgia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct., at 158. The minimum contacts notion was further developed in such Supreme Court cases as Travelers Health Ass'n v. Virginia ex rel. State Corp. Commission, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); and Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). But the two most important cases for our consideration are McGee v. International Life Ins. Co., supra, and Hanson v. Denckla, 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *McGee* took the minimum contacts notion to its farthest extension by finding in personam jurisdiction in California over a Texas corporation through one insurance contract by the corporation with a California resident. In more detail, the plaintiff's son took out an insurance policy with plaintiff as beneficiary through an Arizona company, which was subsequently taken over by the Texas defendant. The defendant mailed the insured a reinsurance certificate in California which was accepted. Thereafter, the defendant mailed premium notices to the insured from Texas and the insured paid the premiums by mail. Despite the paucity of defendant's contacts with California, they were found constitutionally sufficient to support jurisdiction under a California statute

subjecting foreign corporations to suit for insurance contracts with California residents. The Court in Hanson v. Denckla, supra, after noting the trend of expanding personal jurisdiction over nonresidents, stated that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." 357 U.S. at 251, 78 S.Ct., at 1238. In that case, the decedent, while a Pennsylvania resident, created a trust with the Wilmington (Delaware) Trust Company as trustee. The decedent subsequently moved to Florida, where she exercised an inter vivos power of appointment in favor of two other trusts previously established with another Delaware trustee and appointed the balance of her trust corpus to the executrix of her will. After decedent's death in Florida, personal service over the Wilmington Trust Company was made by constructive service, to adjudicate the validity of the corpus passing under the decedent's will. The court distinguished McGee on a number of grounds, and held that the necessary minimum contacts with Florida were absent. Not only did the Delaware trust company transact no business in Florida, but the cause of action did not arise out of an act done there. While the insurance contract in McGee was solicited and accepted in the forum state, the agreement in Hanson v. Denckla was entered into outside the forum state. Second, the Delaware trustee performed no act in Florida and exercised no privilege there. Third, the Court found an absence of a "manifest interest" in the litigation on the part of the forum state, unlike California's clear interest in protecting its insureds. The Court set down the important principle that in considering the minimum contacts test of *International Shoe,* supra:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it*

*is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."* (Emphasis added.) 357 U.S. at 253, 78 S. Ct., at 1240.

There has been great dispute over the extent to which Hanson v. Denckla limited the holding in *McGee* and cut back on an expansive development of in personam jurisdiction. Some courts feel that it limited *McGee* to the insurance field. Trippe Mfg. Co. v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir., 1959). However, the majority of cases seem to feel that Hanson v. Denckla was merely another application of the *International Shoe* doctrine to a different set of facts, Aftanase v. Economy Baler Co., 343 F. 2d 187 (8th Cir., 1965), and imposed no restrictions on *McGee* or on the minimum contacts test. Wisconsin Metal & Chemical Corp. v. De Zurik Corp., 222 F.Supp. 119 (E.D.Wis., 1963). The Fifth Circuit's view on this question is noteworthy:

"It is not necessary to attempt to probe the intricacies of Hanson v. Denckla beyond nothing [sic] that Mr. Justice Black, dissenting thought that the majority decision 'stems from principles stated the better part of a century ago in Pennoyer v. Neff * * *' *The majority did not indicate that it was taking back anything said in McGee."* (Emphasis added.) Roumel v. Drill Well Oil Co., 270 F.2d 550, 557 (5th Cir., 1959).

We are of the opinion that *McGee* should be given full force in the instant action.

It is well established that a single tort committed in the forum state is sufficient to satisfy the minimum contacts test and to vest jurisdiction in the state where the tort was committed. 1 Barron & Holtzoff, supra, § 179, at 694. Smyth v. Twin State Improvement Co., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951). Tate v. Renault, Inc., 278 F.Supp. 457 (E.D.Tenn., 1967); Ander-

son v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill., 1961); Gray v. American Radiator & Sanitary Standard Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 926 (1960). Thus, in Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir., 1965), the defendant foreign corporation was demonstrating an aircraft owned by plaintiff for its own business purposes in Alabama, when the plane crashed. Plaintiff had purchased the plane in Germany but agreed to permit defendant-manufacturer to use it for sales demonstrations. Under an Alabama statute providing for service on nonresident corporations which do any business or perform any work in Alabama, the Fifth Circuit found that the single tort was sufficient for in personam jurisdiction, when the defendant voluntarily entered the forum state and invoked the benefits of its laws. *But see,* Buckley v. New York Times Co., supra; Keckler v. Brookwood Country Club, 248 F.Supp. 645 (N.D.Ill., 1965); Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir., 1966).

However, in personam jurisdiction over a foreign corporation for an isolated contract presents a more difficult question for the courts, even if the cause of action arises out of the contract. 73 Harv.L.Rev. at 926. As one authority has succinctly put it:

"It seems reasonably clear that when a corporation commits a tort within a state * * * jurisdiction over the corporation by the state for the consequences of the tort * * * will be upheld. Where suit is for a nontortious act, the answer is less clear, and will turn on the number of contacts the defendant has with the state, and a balancing of the convenience to the plaintiff of suit there against the inconvenience thus caused to the defendant." 1 Barron & Holtzoff, supra, § 179, at 694.

The greater difficulty in finding jurisdiction in a single contractual matter is that, unlike a tort, it is difficult to localize a contract, since its negotiation, execution, and performance will likely involve more than one state. For example, in the instant case, although defendant was initially contacted in Georgia, it appears from the sketchy record before us that detailed negotiations about the terms of the contract transpired in Florida, and that the deal may have been consummated there, subject to certain conditions subsequent. While the Cessna 310–D in question was used in Georgia, the exchange for it took place in Florida. Only inspection of the Cessna 172 and the payment of a small amount of cash, both in Georgia, remained to finalize the agreement. It is not only difficult to localize the contract in the instant case, it is equally difficult to localize the warranties purportedly given. It would seem that the express and implied warranties would have been made or have arisen in Florida at the time Block accepted the Cessna 310–D, although the record is unclear on this point. Jurisdiction, of course, should not turn on formal differences between actions in tort and actions in contract. Indeed:

"The classification of actions as 'tort' or 'contract' is for illustration only. A 'tort' action for deceit in the inducement of a contract presents many of the jurisdictional difficulties of the usual contract suit, and an action for breach of warranty defies categorization. Traditional classifications should not be considered determinative; the relevant factors must be ascertained in every case." 73 Harv.L.Rev. at 926, n.115.

Breach of warranty may sound in tort, Tate v. Renault, Inc., supra; Wisconsin Metal & Chemical Corp. v. DeZurik Corp., supra; Phillips v. Hooker Chemical Corp., 375 F.2d 189 (5th Cir., 1967), and may be applied against the seller of goods as well as against the manufacturer. Restatement of the Law 2d, Torts, §§ 401, 402, 402A. However, under the facts of our case, where localization of the warranties is difficult, examination of cases dealing with a single

contractual contact with the forum state are more relevant than cases dealing with a single, easily localized, tort. Moreover, no negligence, even in inspection, is alleged against Tampa. Of course, in any case, the necessary minimum contact must be present. *See, e.g.,* Curtis Publishing Co. v. Brieburg, supra; Turner v. Jack Tar Grand Bahama, Ltd., 353 F.2d 954 (5th Cir., 1965).

Perhaps the leading case premising personal jurisdiction on a single contract is Compania de Astral v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646 (1954). There a Maryland corporation sued a Panamanian corporation in Maryland, pursuant to a statute conferring jurisdiction in actions arising out of contracts made in the state. The contract in question was drafted in Maryland, revised and substantially agreed upon in New York, and finalized in Maryland. Jurisdiction was upheld over the foreign corporation on the basis of this contract alone, since it was drafted and finalized in the forum state, most of the witnesses were there, the contract incorporated Maryland law, it was to be performed in Maryland, and an escrow fund guaranteeing performance was established in the state. In Haldeman-Homme Mfg. Co. v. Texacon Industries, Inc., 236 F.Supp. 99 (D. Minn., 1964), the plaintiff sued a Texas corporation in Minnesota, which sold a division of its business to the plaintiff. All the assets of the division were moved to Minnesota. However, no agent of the defendant entered the forum state during negotiations and no duties under the contract were to be performed in Minnesota. Yet, the court found that the transaction fit within Minn.Stat. § 303.13 subd. 1(3), making a foreign corporation subject to suit for making a contract with a Minnesota resident, and also satisfied due process considerations. The court also founded jurisdiction on strict products liability against the defendant-manufacturer, a factor not present in the instant case. Another Minnesota case, McMenomy v. Wonder Builder Corp. of America, 188 F.Supp.

213 (D.Minn., 1960), involved a foreign corporation which entered a distributorship agreement with Minnesota plaintiffs, which was executed in Illinois. Defendant had solicited the agreement by an advertisement in a Minnesota paper and plaintiff accepted, mailing the agreement to the defendant in Illinois. Some of the negotiations leading up to final execution transpired in the forum state and defendant's agents called on Minnesota customers with plaintiff and occasionally checked on sales promotions. These activities were considered sufficient to uphold personal jurisdiction, even though the defendant transacted no other business in the state. But see Dahlberg Co. v. American Sound Properties, Inc., 179 F.Supp. 428 (D.Minn., 1959).

In City of New York v. Continental Vitamin Corp., 254 F.Supp. 845 (S.D.N. Y., 1966), a New Jersey corporate defendant applied for a place on the City's bidder list, was accepted, and successfully bid on a drug contract with the City. The City placed the order with defendant by phone but rejected the defendant's shipment for failure to comply with contract specifications. Section 302(a)(1) of the New York Civil Practice Law and Rules provided for service upon a nonresident if he transacted any business within the state out of which the cause of action arose. Under this provision, the court held that defendant availed itself of the protection of New York's laws by applying for the bidder's list and by making shipments pursuant to a successful bid, thus subjecting itself to New York's personal jurisdiction. The court also noted that defendant maintained a telephone listing in New York, indicating this transaction was not its sole business contact with New York. Electronic Mfg. Corp. v. Trion, Inc., 205 F.Supp. 842 (S.D.Ind., 1962), involved the slightly different situation of a foreign defendant buying goods in the forum state, Indiana, rather than shipping goods into it, as in the usual case. The fact that the goods purchased were made in Indiana pursuant to de-

signs solicited by the defendant at a conference in Indiana, that the defendant claimed a proprietary interest in the design of the goods, and that they were delivered to the defendant in Indiana and paid for there, was deemed sufficient for jurisdiction under Ind.Stat. § 25–316, which subjects foreign corporations to jurisdiction for engaging in any transaction or doing any business in Indiana. In personam jurisdiction was also found in another case construing the Indiana long-arm statute, Kokomo Opalescent · Glass Co. v. Arthur W. Schmid Int'l, Inc., 371 F.2d 208 (7th Cir., 1966). There, the plaintiff sued a Pennsylvania corporation which had contracted to install rolling machines for the plaintiff. Execution of the contract followed two visits by agents of the defendant to the plaintiff's Indiana plant, the machines were assembled under the supervision of the defendant's representatives, and several of defendant's representatives helped to initially run the machines. The court found the activities within the Indiana statute ample to satisfy the minimum contacts test, even though the defendant transacted no other business in Indiana.

Several Illinois cases are of importance, since the language of the Georgia statute is almost identical to the Illinois long-arm provision. In Kaye-Martin v. Brooks, 267 F.2d 394 (7th Cir., 1959), cert. denied, 361 U.S. 832, 80 S.Ct. 84, 4 L.Ed.2d 75, the plaintiff of New York sued the defendant of Arkansas in an Illinois court. The suit involved a contract for the sale of defendant's stock, which had its origin in New York and was executed in final form in Texas. While some negotiations took place in Illinois the court found that this was fortuitous since the defendant came to Illinois to attend a convention. Thus, the defendant had not intended to invoke the protection of Illinois' laws and lacked the minimum contacts necessary to satisfy due process. Jurisdiction over a nonresident defendant was found in another case dealing with the Illinois long-arm statute, National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir., 1959), cert. denied, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542. There, a substantial portion of the negotiations leading up to the contract took place in Illinois and the defendant engaged in activities in the forum state to convince the plaintiff of the advantages of its cooling unit. Sufficient contacts were found surrounding this single contract to impose in personam jurisdiction over the defendants. However, insufficient contacts were found for personal jurisdiction in Trippe Mfg. Co. v. Spencer Gifts, Inc., supra, on an unfair competition charge, when the nonresident defendant's sole contact with Illinois, the forum state, was in mailing catalogs into Illinois containing allegedly expropriated material. A similar holding occurred in Orton v. Woods Oil & Gas Co., supra, where minimum contacts were absent as to a Louisiana company which had employed Illinois plaintiffs for extensive professional services rendered in Illinois. The defendant frequently communicated with the plaintiffs in Illinois but the court found that the nonresident company merely accepted plaintiffs' services.

District courts in Wisconsin have also found sufficient contacts from a single contract to justify personal jurisdiction over nonresident defendants. Thus, for example, in Wisconsin Metal & Chemical Corp. v. DeZurik Corp., supra, plaintiff sued a nonresident defendant for breach of warranty for alleged defects in 34 valves purchased from the defendant. Defendant's only contact with the forum state was through its agent who solicited orders for it and who served as its manufacturer's representative; orders obtained by the agent were either accepted or rejected by the defendant outside the forum state. The court found in personam jurisdiction, stating that it was reasonable to expect corporations which authorize their agents to solicit orders and then deliver goods pursuant to them to defend actions by buyers for breach of warranty. The delivery of goods to the forum state pursuant to an

order secured by its authorized representative constituted more than unilateral activity by the plaintiff.

A variety of other cases have rejected jurisdiction in circumstances analogous to many of those discussed above, for numerous and diverse reasons. In Uible v. Landstreet, 392 F.2d 467 (5th Cir., 1968), the Court, on statutory grounds, found that the activity of nonresident defendants in purchasing stock in a forum-state corporation, attendance at its stockholders' meetings, and inquiry into its financial affairs, was insufficient to constitute "carrying on a business or business venture in the state" for purposes of the forum's long-arm statute. Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir., 1966), denied jurisdiction on the basis of a single contract, since the contract would not be performed, to a substantial degree, in the forum state, as the forum's statute required. Some cases even seem to stand for the proposition that a single shipment of goods could never satisfy the minimum contacts principle of International Shoe. *See, e. g.,* Chassis-Trak, Inc. v. Federated Purchaser, Inc., 179 F.Supp. 780 (D.N.J., 1960); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir., 1956).

Certain principles can be found from the cases discussed above to guide our decision in the instant action. First the majority of cases indicate that there is no due process barrier to founding in personam jurisdiction on a single contract. Second, in most cases upholding jurisdiction on the basis of a single contract, the nonresident defendant undertook certain—often extensive—activities in the forum state in securing, negotiating, and/or assisting in the performance of the contract. In so doing, the defendant availed himself of the privileges of transacting his affairs in the forum state and was thus held to have assumed the burdens of jurisdiction. 357 U.S. at 253, 78 S.Ct. 1228. Third, the burden of proof, even if sub rosa, was placed on the party seeking to secure jurisdiction over the nonresident. Phil-

lips v. Hooker Chemical Corp., supra. Fourth, the courts looked for some contact by the nonresident with the forum state, but held that the quality and nature rather than the amount of defendant's activities in the forum state was controlling. 326 U.S. at 318, 66 S.Ct. 154, 90 L.Ed. 95; 73 Harv.L.Rev. at 928. But a continuing relationship with the forum state, even as to a single contract, is more likely to result in in personam jurisdiction. Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir., 1966); Olavarria & Co. v. Marine Mercante Nicaraguense, S.A., 36 F.R.D. 270 (S.D.N.Y., 1964); Green v. Robertshaw-Fulton Controls Co., supra. Fifth, the interests of the state in hearing the case, as well as the relative conveniences of the plaintiff and defendant are factors to be considered. Sixth, when the question in the case involves defective performance, jurisdiction is easier to find in the state of performance, since the evidence and witnesses are likely to be there. Conversely, evidence of the making of a contract may be in the state of negotiation. 73 Harv.L.Rev. at 928.

■ On the present facts, we are moved to deny jurisdiction, without prejudice to defendants' showing the agreement and alleged warranties bore a closer relation to Georgia than is now shown in the record.

Here, although the initial solicitation occurred in Georgia, substantive negotiations appear to have occurred in Florida, where the Cessna 310–D was exchanged. The solicitation in Georgia seems to have been nothing more than an offer to negotiate, which negotiations took place in Florida. It is likely that any warranties arose in Florida, rather than Georgia. It may be true that:

"* * * [I]f the defendant [third-party defendant, Tampa] enters the state [Georgia] to negotiate with a plaintiff who is resident and present within the state, he has voluntarily chosen to deal commercially with a person in whose welfare the forum state has an interest. It does not

seem unfair to require a corporation which has derived profit from activities thus connected with the forum state, to allocate, as a cost of doing this business, the expense of defending in that state." 73 Harv.L.Rev. at 928.

But from what the scanty record discloses,[2] the great bulk of the transaction occurred in Florida. Witnesses and evidence are more likely to be there than in Georgia.

The third-party defendant did not ship the allegedly defective plane into Georgia pursuant to an order it had solicited here. On the contrary, the Cessna 310–D involved here was flown into Georgia by Defendant Block himself as the quid pro quo for the Aero Commander purchased by Tampa. It was the Aero Commander as to which Tampa made the offer to negotiate. Georgia's relationship to the transaction was tangential. It thus is difficult on the present record to see how Tampa availed "itself of the privilege of conducting activities within the forum State", since it actually conducted no activities here, either related or unrelated to the present cause of action.

There might be some convenience in allowing service as to Tampa, since its agents may be called upon to testify as to defective performance of the Cessna 310–D in the main suit. However, since Tampa was not the manufacturer of the plane this may not be a meaningful possibility. This would be balanced, in any case, by the likelihood that evidence of the transaction and warranties will likely be in Florida, rather than Georgia. It is no more convenient for Tampa to defend in Georgia than for defendants to sue in Florida. Indeed, the third-party defendant would seem to be more inconvenienced, since third-party liability will never arise unless and until the plaintiff recovers in the main action. Georgia has no such "manifest interest" in the litigation to change these considerations. Its interest in protecting a resident who accepts a produce in another state, after a thorough inspection, and then brings it in Georgia, would seem minimal.

Thus, the question is not whether jurisdiction should be permitted on the basis of a single contract—for it should in the proper case. But it appears from the record before us that almost all of Tampa's activities involving negotiation and performance of the contract and warranties occurred outside the forum state.[3]

Long-arm questions present difficult questions of degree. The *International Shoe* test depends upon the peculiar facts in each case. In this case, on the present record, the contract and alleged warranties are too distantly related to Georgia to obtain jurisdiction. 2 Moore, supra, ¶ 4.25[2.–2]. While a more complete factual background of the transaction might show the necessary contacts with Georgia, they do not presently exist on the record.

Because of our disposition of the in personam issue, venue need not be considered.

Therefore, we grant Tampa's motion to dismiss for lack of personal jurisdiction, subject to defendants' producing facts in the record to show minimal contacts with Georgia.

---

2. More information on what transpired in the initial call made to Atlanta would be helpful. It appears that the only agreement made at the time was for Fallon to fly the Cessna 310–D to Tallahassee to meet Block, who flew the Aero Commander. Block, Affidavit, p. 7.

3. Of course, the fact that the suit, in reality, involves activities in Florida—the exchange of the Cessna 310–D—which resulted in consequences in the forum state, does not preclude jurisdiction. S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okl., 1954), appeal dismissed per stipulation, 348 U.S. 983, 75 S.Ct. 575, 99 L.Ed. 742 (1955). However, similar considerations of fairness and minimum contacts should be applied. *See* 73 Harv.L. Rev. at 929.