44545. O'NEAL STEEL, INC. v. SMITH.

ARGUED MAY 29, 1969—DECIDED JULY 1, 1969—REHEARING DENIED JULY 16, 1969—

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Sam F. Lowe, Jr., Robert W. Beynart, Jones, Cork, Miller & Benton, Edward L. Benton,* for appellant.

*Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, Robert S. Slocumb, Hardy Gregory, Jr., Lokey & Bowden, Glenn Frick,* for appellee.

EBERHARDT, Judge. The only question with which we find it necessary to deal in this appeal is whether that portion of our "long arm" statute[1] which provides that our courts may exercise personal jurisdiction over a nonresident who "commits a

---

[1]The Act provides in pertinent part: "A court of this State may exercise personal jurisdiction over any non-resident, or his executor or administrator, as to cause of action arising from any of the acts, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he: . . . (b) Commits a tortious act within this State, except as to a cause of action for defamation of character arising from the act. . ." Ga. L. 1966, p. 343 (*Code Ann.* § 24-113.1).

"As used in this Act 'nonresident' includes an individual, or partnership, association or other legal or commercial entity (other than a corporation) not residing, domiciled, organized or existing in this State at the time a claim or cause of action under section 1 of this Act arises, or a corporation which is not organized or existing under the laws of this State and is not authorized to do or transact business in this State at the time a claim or cause of action under section 1 of this Act arises." Ga. L. 1968, pp. 1419, 1420.

tortious act *within* this State" can be construed to cover a situation where a nonresident corporation allegedly commits a tortious act *outside* the state which causes injury within the State.

The complaint alleges that defendant is a foreign corporation which "manufactured, fabricated, packaged and loaded" a truckload of "H" beams for the construction of a building in Macon; that the beams were packaged in bundles and secured by metal bands fastened by metal clamps; that plaintiff, employed by the Jake Heaton Company which was engaged in the construction of the building, was injured while unloading the beams when one of the metal bands broke causing one of the beams to strike him; and that defendant negligently packaged, secured, loaded, and shipped the beams and failed properly to inspect the packaging, etc., and to warn plaintiff of the dangerous nature of the bundle of beams.

It appears from the record that defendant is a Delaware corporation with its principal office and place of business in Birmingham, Alabama. It has no office or agent in Georgia and does not do business in this State. It is in the business of fabricating and selling structural steel and sold some of it to Brice Building Company in Alabama, the steel being delivered to Eagle Motor Lines, Inc. by defendant at its Birmingham plant. It is plaintiff's contention that a part of this steel found its way to the job site in Macon, whereupon plaintiff was injured in unloading it.

Defendant denies that it has transacted any business within Georgia and asserts that it has not committed any tortious act within this state.

The controversy submitted to this court by the parties is whether the "long arm" statute provides for jurisdiction over a nonresident corporation which commits negligent acts in Alabama resulting in injury to a plaintiff in Georgia.[2] The question is raised by virtue of defendant's motions to dismiss the complaint and to quash the service of summons made under the

---

[2]Other questions are raised but, under the view we take of the case, it is unnecessary to consider them.

statute on the grounds, inter alia, that the statute is inapplicable to the facts of the case and hence the court lacks jurisdiction over defendant's person. See CPA § 12 (b) (*Code Ann.* § 81A-112(b)). The lower court denied the motions, and the matter is here for determination upon certificate of the trial judge pursuant to *Code Ann.* § 6-701(a)2.

Although this is a question of first impression in this State, it has been considered in other jurisdictions resulting in a conflict of authority. See Annot., 19 ALR3d 13, 61 (1968); Weissman, The Georgia Long Arm Statute, 4 GSBJ 13. It is not a problem settled by the ruling in Pennoyer v. Neff, 95 U. S. 714 (24 LE 565), as became apparent in International Shoe Co. v. Washington, 326 U. S. 310 (66 SC 154, 90 LE 95, 161 ALR 1057); Travelers Health Assn. v. Virginia, 339 U. S. 643 (70 SC 927, 94 LE 1154); McGee v. International Life Ins. Co., 355 U. S. 220 (78 SC 199, 2 LE2d 223); and Hanson v. Denckla, 357 U. S. 235 (78 SC 1228, 2 LE2d 1283). Unless authority for the exercise of personal jurisdiction over the defendant is found in our "long arm" statute there is none. Consequently, what we have is a problem of statutory construction or of application with particular reference to the phrase "commits a tortious act within this State." The two leading cases construing this phrase found in "long arm" statutes of other states and in relation to a situation where out-of-state wrongs result in in-state injurious consequences are Gray v. American Radiator &c. Corp., 22 Ill. 2d 432 (176 NE2d 761), and Feathers v. McLucas, reported as one of a trilogy of cases under the style of Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 13 N. Y. 2d 443 (209 NE2d 68), the other being Singer v. Walker.

In the Gray case a nonresident corporation supplied a defective safety valve to the manufacturer of a water heater outside Illinois. In the course of commerce the heater was sold to an Illinois consumer who was injured when it exploded. In sustaining jurisdiction, the Illinois court held that notwithstanding the fact that the wrong arose at the out-of-state place of manufacture and only the consequences occurred in Illinois, the negligence in manufacturing the valve could not be separated from the resulting injury so that for purposes of the "long arm"

statute the tort was committed in Illinois. In reaching this result the Illinois court analogized to the conflict of laws rule that the place of a wrong is where the last event takes place which is necessary to render the actor liable. Restatement, Conflict of Laws, § 377. Also mentioned was the rule that statutes of limitation are computed from the time when the injury is done, thereby indicating that the place of injury is the determining factor. Rejecting the argument that the term "tortious act" refers only to the act or conduct, separate and apart from any consequences thereof, the court stated, inter alia: "We think the [legislative] intent should be determined less from technicalities of definition than from considerations of general purpose and effect. To adopt the criteria urged by defendant would tend to promote litigation over extraneous issues concerning the elements of a tort and the territorial incidence of each, whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature. As we observed in Nelson v. Miller, 11 Ill. 2d 378 [143 NE2d 673], the statute contemplates the exertion of jurisdiction over non-resident defendants to the extent permitted by the due-process clause." Gray v. American Radiator &c. Corp., 22 Ill. 2d 432, 436, supra.

In the New York case of Feathers v. McLucas, 15 N. Y. 2d 443, supra, the nonresident corporation negligently designed and assembled a steel tank in Kansas under contract with a Missouri corporation presumably with knowledge that the latter would mount it on a wheelbase and sell it to a Pennsylvania corporation operating as an interstate carrier. While en route through New York from Pennsylvania to Vermont, the steel tank, containing liquefied propane gas, exploded and injured plaintiffs.

As in the Gray case and this case, the question before the New York court was whether the facts satisfied the standard of the "long arm" statute that the defendant be shown to have committed a tortious act within the state. That court held that "The language of paragraph 2—conferring personal jurisdiction over a nondomiciliary 'if, in person or through an agent, he . . . commits a tortious act *within* the state'—is too plain and

precise to permit it to be read, as has the Appellate Division, as if it were synonymous with 'commits a tortious act *without* the state which causes injury within the state.' The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording." 15 N. Y. 2d 443, 460, supra. Flatly rejecting the rationale of the Illinois court that since the "last event" under the conflict of laws rule—that is, the injury—had occurred in the forum state, the tort was committed there for purposes of the jurisdictional statute, the New York court stated: "We find this argument unconvincing. It certainly does not follow that, if the 'place of wrong' for purposes of conflict of laws is a particular state, the 'place of the commission of a tortious act' is also that same state for purposes of interpreting a statute conferring jurisdiction, on that basis, over nonresidents. [Citations omitted]. Not only are these separate and distinct problems but the rules formulated to govern their resolution embody different concepts expressed in different language. Moreover, the place of the 'tort' is not necessarily the same as the place of the defendants' commission of the 'tortious act.' In our view, then, the interpretation accorded the statute by the Illinois court disregards its plain language and exceeds the bounds of sound statutory construction. [Citations omitted]." 15 N. Y. 2d 443, 463, supra.

We agree with the result reached in the New York decision, from which we shall presently quote further. At the outset we must note that the *courts* of this State have no inherent power to subject foreign corporations, not present and not doing business in this state, to their jurisdiction. As stated in Restatement, Judgments, § 7, comment *a* (1942): "Even though the State in which a judgment is rendered has jurisdiction over the defendant, a *court* of the State has no jurisdiction to render a judgment against him if the *State* has not given to the *court* power to entertain the action. Although a *State* has jurisdiction over the person of the defendant, it may not have given to a *particular court* or it may not have given to *any of its courts* power to entertain the action. In such a case the court has no 'competency' to render a valid judgment. The court has no

power to render a valid judgment, not because the *State* lacks power but because it has not conferred power upon the *court.*"

Thus "[t]here are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state *as made by its legislature.* If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. . . This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State *statute* is broad enough to assert jurisdiction over the defendant in a particular situation." Pulson v. American Rolling Mill Co., 170 F2d 193, 194. (Emphasis supplied.) "It is a legislative, not judicial, function to extend or enlarge jurisdiction over foreign corporations. . . Rufo v. Bastian-Blessing Co., 405 Pa. 12, 22 (173 A2d 123). See also Restatement, Judgments, § 23.

Hence, we agree with the New York court when it observed: "However, the question presented is not—as the Appellate Division intimated it was by its reference to 'minimum contacts'—whether the Legislature *could* constitutionally have enacted legislation expanding the jurisdiction of our courts to the extent determined by the Appellate Division or whether, indeed, the legislature *should* have done so in light of the pertinent policy considerations affecting the contending interests of local plaintiffs and foreign manufacturers but whether the legislature *did,* in fact, do so. In short, . . . our task is simply to determine the import and scope of the jurisdictional provision which the legislature actually enacted." 15 N. Y. 2d 443, 459.

The plain language of our statute requires that the tortious act be committed *within* the state, and we are unable to agree that this language can be construed as synonymous with "com-

mits a tortious act *without* the state which causes injury within the state." If our legislature meant something other than what is plainly indicated by the words used, it could have used language appropriate to indicate a different intent. For example, it could have conferred jurisdiction, as have other legislatures, over a foreign corporation which commits a tort "in whole *or in part*"[3] in this state, or one "which has caused *an event* to occur in this State out of which the claim which is the subject of the complaint arose"[4]; or it might have made the jurisdictional basis "the doing or causing any act to be done, or *consequences to occur*, in the state resulting in an action for tort,"[5] or "the commission of any act which results *in accrual* within this state of a tort action;"[6] or, in addition to providing for jurisdiction as to causes of action arising out of "tortious conduct" in the state, it might have gone further as have some legislatures and also included a "products liability" section in the jurisdictional statute to provide generally as to causes of action arising out of the production, manufacture, or distribution of goods which are used or consumed in the state;[7] or it might have, as New Jersey has done, permitted extraterritorial service subject only to "due process of law."[8] Perhaps more significantly, our legislature did not choose to adopt the language of the Uniform Interstate and International Procedure Act § 1.03 (a) (3) (4), 9B ULA 307, which provides: "A court may exercise personal jurisdiction over a person, who acts di-

---

[3]See Iowa Code Ann. § 617.3; Minn. Stat. § 303.13, subd. 1 (3); Vt. Stat. Ann. Tit. 12, § 855; Miss. Code Ann. § 1437; Mo. Rev. Stat. § 351.633 (1); Vernon's Tex. Rev. Civ. Stat. Ann. Art. 2031b (4); W. Va. Code Ann. § 31-1-71.

[4]See 16 Ariz. Rev. Stat. Rule 4 (e) (2).

[5]See Mich. St. Ann. §§ 27A.705 (2), .715 (2), .725 (2), .735 (2).

[6]See Rule 4B (1) (b), Mont. R. Civ. P., Tit. 93 Rev. Codes of Mont. Ann.

[7]See Gen. Stat. of N. C. § 55-145 (a) (3) (4); Gen. Stat. of Conn. § 33-411 (c) (3) (4). See also Nev. Rev. Stat. 14.080; Va. Code Ann. § 8-81.2 (a) (5).

[8]See Roland v. Modell's Shoppers World of Bergen County, 92 N. J. Super. 1 (222 A2d 110); Annot., 19 ALR3d 127.

rectly or by an agent, as to a [cause of action] [claim for relief] arising from the person's . . . (3) causing tortious injury by an act or omission in this state; (4) causing tortious *injury in this state* by an *act or omission outside this state* if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State . . ."[9]

Against this background we think the comment of the New York Court is highly appropriate: "It is not inappropriate to note that for some years prior to the enactment of [New York's "long arm" statute] much attention had been given to the subject of state exercise of personal jurisdiction over a non-resident manufacturer charged with tortious activities in the manufacture of a product in another state which caused injury in the forum where the product was eventually marketed and sold and that legislation expressly conferring jurisdiction on that basis had been enacted in a number of states. If, in fact, the legislature of this State had intended to confer jurisdiction on the strength of injurious forum consequences alone, without regard to the locus of the commission of the tortious act itself, it would presumably have used language appropriate to reflect such a design. . . In sharp contrast, the legislature chose to adopt language which, in so many words, demands that the 'tortious act' be one committed by the defendant, 'in person or through an agent,' *within* this State." 15 N. Y. 2d 443, 461, supra.

We conclude that the New York court expounds the better view, and we decline to follow the Illinois rule. Thus we hold that Ga. L. 1966, p. 343 (*Code Ann.* § 24-113.1 (b)) does not cover the situation where a nonresident corporation commits

---

[9]Adopted in Arkansas, Oklahoma, and the Virgin Islands. See Ark. Stat. Ann. §§ 27-2501—27-2507; 12 Okl. Stat. Ann. §§ 1701.01—1706.04; 5 V. I. C. Ann. §§ 4901—4943. The quoted material was adopted substantially in Maryland and Virginia. See 7 Md. Ann. Code Art. 75, § 96 (a) (3) (4); Va. Code Ann. § 8-81.2 (a) (3) (4). See also New York's statute as amended in 1966, CPLR § 302 (a), 7 B McKinney's consol. Laws of N. Y.

a tortious act outside the state with only the injurious consequences occurring within the state. On the matter of legislative intent, compare *Buckhead Doctors' Building v. Oxford Finance Companies,* 115 Ga. App. 52 (153 SE2d 650).

"Any plea for further expansion of its scope, however desirable such expansion may seem, is a matter for the Legislature rather than the courts."[10] Feathers v. McLucas, 15 N. Y. 2d 443, 464, supra. "Broadening its scope to include subject matter or territory which was not included therein as enacted . . . is 'judicial legislation' and not 'statutory construction.'" Ettinger v. Studevent, 219 Ind. 406 (38 NE2d 1000). "[C]ourts can not change laws; they can only interpret them." *Adams v. Powell,* 67 Ga. App. 460, 462 (21 SE2d 111). "[I]n seeking a sound construction we must look, not to what we would prefer, but solely to what sayeth the law." *Hood v. First Nat. Bank,* 219 Ga. 283, 286 (133 SE2d 19).

Had we concluded that the holding in Gray v. American Radiator &c. Corp., 22 Ill. 2d 432, supra, is compatible with and could be utilized in interpreting the language of our statute, we should nevertheless reach the same result. The "minimum contacts" recognized as requisites to justify the assumption of personal jurisdiction of a nonresident after service under the "long arm" statute do not appear as they did in International Shoe Co. v. Washington, 326 U. S. 310, supra, Travelers Health Assn. v. Virginia, 339 U. S. 643, supra, and Hanson v. Denckla, 357 U. S. 235, supra. It was neither alleged nor proved that this defendant, an Alabama resident, sells or has sold to users, contractors, wholesalers or dealers in this state on any occasion unless it be this one instance, when it is to be noted that the sale and delivery to Brice Building Company was made in

---

[10]The New York Legislature has amended the statute so that the courts of that state have jurisdiction over a nonresident who commits a tort without the state causing injury within the state if he regularly does or solicits business, etc. within the state, or should reasonably expect the act to have consequences within the state and derives substantial revenue from interstate commerce. See N. Y. Laws 1966, Ch. 590 (NY CPLR § 302 (A) (3)), note 9, supra.

Birmingham, after which the steel was shipped to Macon for use in construction.

It follows that the judgments denying defendant's motions to dismiss and to quash must be

*Reversed. Bell, P. J., and Deen, J., concur.*