### 46375.   CASTLEBERRY et al. v. GOLD AGENCY, INC. et al.

HALL, Presiding Judge. Plaintiffs in six actions for personal injury or wrongful death combine to appeal the grants of summary judgment to two of the defendants.

These actions all arose out of the same occurrence when a racing car at the Yellow River Drag Strip went out of control and ran into a crowd of spectators. In addition to the driver Platt and the owner of the drag strip, plaintiffs named as defendants The Gold Agency (the driver's booking agent) and the Coca-Cola Company. Gold made an appearance to contest jurisdiction. Its motions to dismiss were treated as motions for summary judgment and granted on jurisdictional grounds. Coca-Cola's summary judgment was granted on the issue of liability. However, one alleged basis of liability for both these defendants affects the jurisdictional question, so we shall consider this issue first.

1. The Gold Agency acts as a booking agent for many racing drivers and offers promotional services to raceways. It conceived and proposed to Coca-Cola a promotional scheme to be known as the "Coca-Cola Cavalcade of Funny Cars." They entered into a contract which called for Coca-Cola to furnish the prize money and pay for certain equipment for a series of racing competitions in major cities which Gold was to completely develop, organize and arrange. Platt had been selected by Gold to be one of the drivers participating in the "Cavalcade." However, the disastrous race at Yellow River was not a Cavalcade event, it took place more than month before the first such scheduled event and no Cavalcade race was to be run at Yellow River. Platt had made the Yellow River date himself and called upon Gold only to furnish and secure the usual contract between himself and the drag strip for the performance.

Plaintiffs alleged and now contend that Coca-Cola, Gold and Platt were engaged in a joint venture (the Cavalcade); that the Yellow River race was in furtherance of the venture, because Platt was testing his machine in preparation for the upcoming Cavalcade; and therefore the negligent acts of Platt were imputable to the others.

As might be expected, the discovery in these cases is voluminous. Nevertheless, the plaintiffs have failed to point to any evidence in support of their allegations on this point, with the sole exception of the undisputed fact that Platt was using drag chutes furnished by Coca-Cola on his vehicle that day. Platt's own testimony refutes the theory of testing for the Cavalcade. He began building his vehicle long before he was recruited for the Cavalcade. He was free under his contract with Gold to make his own dates and had, in fact, made two for that same month at Yellow River, where he had raced many times in the past. These dates were made at the invitation of the owner, a personal friend, and for a standard fee. He expected to race in other non-Cavalcade events during the year with the same car. He testified that the only "testing" done on these machines is some minor chassis adjustment after running at a slow speed and an engine tune up (which he had done the previous day); then one takes them directly into competition. He received the special Coca-Cola drag chutes while his car was still under construction so he attached them. (He had no others and was already in debt for $20,000 on this car.) He in no way looked to Coca-Cola for financial backing in the construction of the car or for payment or prize money at Yellow River (unlike the guaranteed prizes in the Cavalcade). Finally, he said that he had no instructions from Coca-Cola or Gold concerning the Yellow River race and that Gold's only connection with it was "to make it legal [furnish a contract]" after he had made the deal with the owner, a standard procedure under his agency contract with Gold.

Coca-Cola also offered a deposition of an officer to the effect that it had no knowledge, control or concern with this race of Platt's.

The evidence submitted on motion for summary judgment clearly pierced the allegations of joint venture or subagency as to *this*

*occurrence.* Plaintiffs offer nothing in rebuttal which creates a material issue of fact. The cases they cite for the proposition that joint venture or agency is a jury question all had factual issues. Where there is no factual dispute, a court may hold there is no joint venture as a matter of law on motion for summary judgment. *Gainesville Carpet Mart v. First Federal Savings &c. Assn.,* 121 Ga. App. 450 (174 SE2d 230). Accordingly, the trial court did not err in granting summary judgment to Coca-Cola.

2. The Gold Agency is a Texas corporation with its principal office in Illinois. Service was attempted on Gold under both *Code Ann.* § 24-113.1 (Long Arm Statute) and *Code Ann.* § 22-3210 (service on foreign corporations through the Secretary of State). The latter method is clearly insufficient. The statute provides for this type of service, in certain circumstances, on a foreign corporation "authorized to transact business in this State." The evidence is undisputed that Gold never applied for nor was ever granted authority to transact business in Georgia under Chapter 22-14 of the Georgia Business Corporation Code and therefore § 22-1410 has absolutely no application.

The Long Arm Statute poses a more difficult problem. *Code Ann.* § 24-113.1 grants personal jurisdiction over a nonresident "as to a cause of action arising from" certain enumerated acts or omissions, the pertinent ones here being "(a) Transacts any business within this state; (b) Commits a tortious act or omission within this state . . ." Without the joint venture theory, the only tortious acts alleged against Gold concern its failure to inspect the car and the drag strip and to require the drag strip to meet minimum safety requirements and to furnish spectator's liability insurance. If any of these omissions were tortious, they were committed in Illinois and therefore give no basis for jurisdiction under subsection (b). *O'Neal Steel, Inc. v. Smith,* 120 Ga. App. 106 (169 SE2d 827).[1]

Whether furnishing and securing the contract between Platt and

---

[1] While inapplicable here because it was not enacted until 1970, *Code Ann.* § 24-113.1 (c) might allow the exercise of jurisdiction under the facts of this case.

the drag strip constitutes the transaction of any business within the state was correctly answered, we believe, by United States District Judge Sidney O. Smith applying Georgia law in an identical action. Loftis v. Yellow River Drag Strip, Inc., No. 12554, N. D. Ga., November 3, 1969. Noting the constitutional requirement of minimum contacts as well as the statutory criterion of transacting business, he found that none of the acts surrounding the negotiation of the contract ever took Gold agents or personnel into Georgia (and unlike most cases construing similar statutes, no products are involved). He found, therefore, no significant contact upon which personal jurisdiction could be based. He cogently distinguished tests for choice of law and exercise of jurisdiction. Finally, he correctly pointed out that any *other* business which did bring Gold agents to Georgia would be irrelevant since jurisdiction was not asserted on the basis that Gold was generally "doing business" here, but pursuant to *Code Ann.* § 24-113.1 which requires that the cause of action arise from the act of transacting the business.

The trial court did not err in granting summary judgment.

*Judgment affirmed. Jordan, P. J., and Quillian, J., concur. Eberhardt, J., disqualified. Whitman, J., not participating due to illness.*

ARGUED JUNE 30, 1971—DECIDED OCTOBER 22, 1971.

*Cullen M. Ward, Frank M. Eldridge,* for appellants.

*Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Jr., Jefferson D. Kirby, III, Hurt, Hill & Richardson, James C. Hill,* for appellees.