**FULGHUM INDUSTRIES, INC.,**
**Plaintiff,**

**v.**

**WALTERBORO FOREST PRODUCTS,**
**INC. and Holly Hill Lumber**
**Company, Defendants.**

**Civ. A. No. 544.**

United States District Court,
S. D. Georgia,
Swainsboro Division.

June 12, 1972.

Plaintiff's headquarters are located at Wadley. Defendants filed motions to dismiss and answers. The action was then removed to this Court. The jurisdictional issue has been briefed and orally argued.

The pleadings, answers to interrogatories and discovery depositions show that the contract sued on was executed in 1969 by the plaintiff in Georgia and by the defendant in South Carolina. By its terms it is governed by South Carolina law. In the negotiations leading up to the making of the contract officials of the South Carolina corporation came to Georgia where they inspected two similar plants. They also observed plaintiff's facilities. Negotiations were carried out for several months in both South Carolina and Georgia. Some of the negotiations were by telephone and mail. An oral understanding was finally reached in South Carolina. Execution of the written agreement followed.

The designing, engineering and manufacture of the mill equipment took place largely in Georgia. About 70% of the physical volume of the entire installation was manufactured here. Prior to beginning the manufacture thereof three months of preparatory engineering work was performed by Fulghum at its Georgia plant. From time to time officials of the defendant corporation came to Georgia to check on the progress of the production of the machinery and equipment installed at the mill in South Carolina.

Defendant sells products to some customers in Georgia by telephone and mail. Such sales amounted to 8% or 9% of the total dollar volume of its business. Walterboro Forest Products has no office, place of business, personnel or sales routes in Georgia. The business described is in no way related to the contract between it and Fulghum Industries.

Randolph C. Karrh, Swainsboro, Ga., J. Corbett Peek, Jr., and Glenville Haldi, Peek, Whaley & Haldi, Atlanta, Ga., for plaintiff.

Milton A. Carlton, Spivey & Carlton, Swainsboro, Ga., for defendants.

## ORDER ON MOTION TO DISMISS

LAWRENCE, Chief Judge.

Does the Georgia Long-Arm statute permit service upon and create jurisdiction as to the South Carolina defendant in this breach of contract action?

The defendant, Walterboro Forest Products, Inc., is a South Carolina corporation.[1] Fulghum Industries, Inc., the plaintiff, is a Georgia corporation which contracted to engineer, design and build a "chipping saw" milling operation for defendant to be installed in South Carolina. Under the contract the defendant was buying a final product, a mill to be completely erected and functioning at Walterboro.

The action by Fulghum was brought in Jefferson County Superior Court.

Service of process was effected under the Long-Arm statute on the theo-

---

1. The other defendant, Holly Hill Lumber Company, is also a South Carolina corporation. It guaranteed performance by Walterboro Forest Products, Inc.

ry that defendant transacted the business in Georgia.[2] The Court of Appeals of this State has made it clear that the statute requires that "the cause of action arise from the act of transacting the business." Castleberry v. Gold Agency, Inc., 124 Ga.App. 694, 697, 185 S.E.2d 557, 560; Coe & Payne Company v. Wood-Mosaic Corporation et al., 125 Ga.App. 847, 189 S.E.2d 459 (1972). See also Loftis v. Yellow River Drag Strip, Inc., No. 12554, N.D.Ga., November 3, 1969. Accordingly, the mail and telephone business of defendant in Georgia, which is unrelated to the contract with Fulghum, is irrelevant to the existence of jurisdiction under the Long-Arm statute.[3] As already noted, plaintiff's contention that it can sue defendant in Georgia is predicated solely upon the fact that such nonresident transacted business in Georgia out of which the alleged breach of contract arose. There is no contention that the South Carolina corporation was "doing business" in this State within traditional concepts so as to permit service in any county where it has an agent.[4] Jurisdiction in this case stands or falls on the language in § 24–113.1 (a): "Transacts any business within this State."

The bare bones of the statute take on the flesh of meaning only by case-by-case application of it to the multifarious shapes that transaction of business assumes. The statutory language leaves us without "concrete expression of the legislative intent" and the question must be "decided on the individual circumstances of the case." See Coe and Payne Company v. Wood-Mosaic Corpo-

ration et al., *supra*. In no case decided up to this time has there been a similar or analogical factual background. The trail is marked only by such nebulous guides as "minimum contacts" of the nonresident with this State and the "traditional notions of fair play and substantial justice" required by due process under the Fourteenth Amendment. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; Smith v. Piper Aircraft Corporation, 425 F.2d 823, 825 (5 Cir.)

■ I am aware that there are decisions to the effect that negotiations and consummation of a contract within a state is sufficient to confer jurisdiction under the Long-Arm statute over a nonresident. Thompson v. Ecological Science Corporation, D.C., 295 F.Supp. 1307, 1311 and Karlin v. Avis, D.C., 326 F.Supp. 1325, 1328; Lurie v. Rupe, 51 Ill.App.2d 164, 201 N.E.2d 158; Iroquois Gas Corporation v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494; 23 A.L.R.3d 551; 24 A.L.R.3d 532; 27 A.L.R.3d 397. But surely it is a tenuous connection with the State of Georgia where officials of a foreign corporation come here to look into the possibility of entering into a contract with a resident of Georgia to design and manufacture machinery to be installed at defendant's plant in South Carolina; inspect two similar plants and look over plaintiff's operation in this State; visit Wadley in order to observe the manufacture of the

2. The statute in question provides: "A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

    (a) Transacts any business within this State; . . ." See Ga.Code Ann. § 24–113.1.

3. Under the Act of 1970 (Ga.Laws, 1970, 444f.) if a tortious injury is committed in Georgia and is caused by an act or omission outside this State jurisdiction attaches if the tortfeasor regularly solicits business in Georgia or "derives substantial revenue from goods used or consumed . . . in this State."

4. If the foreign corporation fails to appoint a registered agent for service, substituted service may be made on the Secretary of State. Ga.Code Ann. § 22–1410.

machinery, and undertake part of the negotiations in Georgia. None of this constitutes, in my opinion, taken in isolation or totality, the "minimum contacts" that satisfy the constitutional test for exercise of jurisdiction. While the engineering work and the manufacture of the machinery and equipment took place in Georgia, these were unilateral activities of Fulghum and represent no significant contact of the nonresident with this State. See Piracci v. New York City Employees' Retirement System, D.C., 321 F.Supp. 1067; Anderson v. Shiflett, 435 F.2d 1036 (10 Cir.).

These views do not comport with holdings in some jurisdictions but they reflect, I believe, the guarded approach which Georgia courts have thus far shown in construing the Long-Arm statute.[5] I do not predict they would go for an interpretation of § 24–113.1 (a) which would tend to chill the constitutional liberty of a citizen to travel for the purpose of looking into a business venture. Being of the mind that the statute would be construed consistently with the views expressed above, it is unnecessary to deal with the federal question of whether or not the Due Process Clause would be violated if jurisdiction attached under the statute.

Plaintiff raises the matter of defendant's waiver of jurisdiction as a result of the filing of defenses and a counterclaim. See Wilbanks v. Wilbanks, 220 Ga. 665, 669, 141 S.E.2d 161. The former practice in Georgia in such a case was to make a "special appearance" for the purpose of objecting to jurisdiction and filing defenses subject to such

5. See casenote by Frank Mays Hull in 8 Georgia Bar Journal (February, 1972), 415f., 419.

* Since this ruling, the Fifth Circuit Court of Appeals has reached the same result in a case possessing factual similarity. It went up on appeal from the District Court for the Northern District of Georgia which dismissed the action for lack of in personam jurisdiction over the nonresident defendants. See Owen of Georgia, Inc. v. Blitman et al. (5 Cir., 1972) 462 F.2d 603. The Georgia plaintiff sued the

plea. That is what in effect occurred here. See Milam et al. v. Terrell, 214 Ga. 199, 104 S.E.2d 219. Generally, a waiver results only when a defendant pleads to the merits without excepting to the jurisdiction of the court. Black v. Milner Hotels Incorporated, 194 Ga. 828, 831, 22 S.E.2d 780; Stolaman v. Stolaman, 220 Ga. 799, 142 S.E.2d 70; Ga.Code Ann. § 81–503. The section of the Code referred to was repealed by the Civil Practice Act of 1966 which provides that the defense of lack of jurisdiction over the person is waived only if it is not made by motion or included in the original responsive pleading. § 81A–112(h) (1). The waiver contention is without merit and is denied.

The complaint is dismissed for want of jurisdiction over the defendants.*

Massachusetts builders of a housing project located at Boston. The suit was based on an agreement for fabrication and delivery of steel to that State. After what appears to have been telephone contacts, a representative of plaintiff travelled to Massachusetts, met with representatives of the nonresident defendants and allegedly entered into a contract for the necessary steel fabrication to be performed in plaintiff's Georgia factory. The Fifth Circuit upheld the dismissal of the action by the District Court.