**Chilton THORINGTON and Harmon Wages, Plaintiffs-Appellants,**

v.

**William K. CASH, Defendant-Appellee.**

No. 73–3611

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 20, 1974.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

James B. Hiers, Jr., Atlanta, Ga., for Chilton Thorington.

Taylor W. Jones, Atlanta, Ga., for Harmon Wages.

Ronald L. Reid, Ben F. Johnson, III, Atlanta, Ga., for defendant-appellee.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Reverend Chilton Thorington, a Georgia resident, first met William K. Cash, a Florida resident, at a wedding in Atlanta in 1969 as each performed his role of minister and best man.[1] Once again Thorington and Cash have met in Atlanta, this time in more pedestrian although more partisan roles as Plaintiff and Defendant in the Federal District Court (now Appellant and Appellee). The present reunion has been short-lived however. Upon determining that the earlier encounter coupled with other assorted activities did not provide the bare minimum of Georgia contacts[2] constitutionally required to sustain the exercise of the Georgia long-arm statute,[3] the

---

1. We have been unable to determine from the record whether Appellant Wages participated in the matrimonial ceremony.

2. See International Show Company v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

3. Ga.Code Ann. 24-113.1. *Personal jurisdiction over nonresidents of State.*—A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

(a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; or

(d) Owns, uses or possesses any real property situated within this State.

District Court withdrew its jurisdictional welcome mat.

■ Since in our *Erie* role we are convinced that the courts of Georgia would find Cash amendable to service of process under subsection (b) (tortious act within) of the Georgia long-arm statute based on Thorington's allegations that Cash engaged in pre-1970 extraterritorial tortious conduct causing injury in Georgia by sending material misrepresentations into Georgia upon which Thorington ultimately relied, and since we have no doubt that the demands of due process are similarly satisfied, we must reverse and remand for yet another encounter in Atlanta.

Due to the Georgia legislature's 1970 amendment of the long-arm statute rebuffing a restrictive interpretation by the Georgia Court of Appeals (see text accompanying note 8, *infra*) our decision is of limited temporal applicability since we necessarily deal only with external tortious activity with injurious internal effects occurring between March 10, 1966—the effective date of subsection (b) (tortious act within) and July 1, 1970—the effective date of subsection (c) (act without/tortious injury within).

Appellants Thorington and Wages filed suit in the District Court for the Northern District of Georgia seeking to rescind a limited partnership agreement in which Appellee Cash is the general and managing partner. The grounds were that Cash (1) fraudulently induced them to enter into the partnership through a wilful misrepresentation of material facts, (2) unlawfully sold them an interest in the partnership in violation of the Georgia securities laws, (3) was grossly negligent in managing the partnership assets, and (4) violated the specific terms of the partnership agreement.

Thorington and Wages sought to recover their respective investments of $10,000 and $15,000 plus interest, attorneys fees, and punitive damages. They assert that the Court may exercise personal jurisdiction over non-resident defendant Cash pursuant to subsections (a) (transacts any business) and (b) (tortious act within) of the Georgia long-arm statute, note 3, *supra*.

■ In the complaint, a personal affidavit, and a response to Appellee's motion to dismiss, Thorington alleged the following facts in support of the Court's jurisdiction. [4]

During their initial meeting at the Atlanta wedding, Cash "mentioned" to Thorington that he was engaged in a limited partnership which might prove to be a profitable investment opportunity for Thorington.[5]

4. The complaint left doubts as to the details of the respective participation of Appellants in the transactions of jurisdictional significance. Particularly, a dispute existed as to the residency of Wages. While the complaint alleged that Wages was a citizen and resident of Georgia, the sealed Florida certification of limited partnership listed Wages as a Florida resident. Furthermore Wages executed the partnership agreement in Florida.

Faced with these difficulties, the District Court invited Appellants to clarify the facts pertinent to the jurisdictional determination. Accordingly, Thorington filed a brief and affidavit. Wages failed to respond.

It is settled that the burden of proof rests on the party seeking to establish jurisdiction over a non-resident. See, e. g., Marival, Inc. v. Planes, Inc., N.D.Ga., 1969, 302 F.Supp. 201, 205; Talcott v. Midnight Publishing Co., 5 Cir., 1970, 427 F.2d 1277. Having been afforded more than an ample opportunity, Wages failed to show that defendant Cash engaged in any activity within the scope of the Georgia long-arm statute with respect to Wages' claims for relief. Consequently, the District Court properly granted the motion of dismissal with respect to Wages.

5. During this initial encounter, Cash provided Thorington with specific instructions on how to invest in "Broadway Joe's"—a fast food chain that Cash was helping to organize. The Georgia long-arm statute restricts the exercise of jurisdiction to "a cause of action arising from any of the acts * * * enumerated in this section [i. e., transaction of any business, commission of a tortious act]". Accordingly, the Georgia Court of Appeals has held that an unrelated business transaction is irrelevant to the determination of whether a non-resident "transacts *any*

Following the wedding Cash and Thorington engaged in negotiations by mail and telephone regarding Thorington's participation in the limited partnership. While Cash apparently generally called or wrote from Florida, Thorington asserts that on certain occasions Cash informed him that he was calling from a hotel in Atlanta. Thorington further asserts that during the course of these negotiations, Cash made certain misrepresentations of material facts regarding the potential profitability of the partnership investment and on other matters as well upon which Thorington ultimately relied in entering into the agreement.

In March 1969, Cash mailed a copy of the partnership agreement to Thorington in Atlanta. Thorington there executed the agreement, had it notarized and returned it by mail to Cash in Florida. After the limited partnership suffered financial setbacks in consequence of unsuccessful investments, Appellants initiated this litigation.

The District Court granted Appellee's motion to dismiss for lack of personal jurisdiction over the defendant under both the (i) transaction of business and (ii) tortious activity subsections of the Georgia long-arm statute.

We need not reach the question of whether Cash transacted any business within the scope of the long-arm statute and the due process clause since with deference to the expertise of the District Court,[6] we find that Thorington has carried his burden of establishing personal jurisdiction over Cash under subsection (b)—the tortious act provision.

Under the circumstances, a brief history of the tortious activity provisions of the Georgia long-arm statute is in order.[7] In 1966 the Georgia legislature enacted subsection (b) which provides jurisdiction over a non-resident who "Commits a tortious act or omission within this State * * *".

In spite of the broad language of subsection (b), the Georgia Court of Appeals in O'Neal Steel, Inc. v. Smith, 1969, 120 Ga.App. 106, 169 S.E.2d 827, vacated on other grounds on remand, 225 Ga. 778, 171 S.E.2d 519; followed in Castleberry v. Gold Agency, Inc., 1971, 124 Ga.App. 694, 185 S.E.2d 557, held that subsection (b) was inapplicable where a non-resident committed a tortious act outside of Georgia which caused injury within the state.[8] This policy decision was short-lived.

Presumably in response to this decision, the Georgia legislature enacted subsection (c) which provides jurisdiction over a non-resident who

"Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State * * *."

Ga. Code Ann. § 24–113.1(c).

---

business" within the meaning of subsection (a). Castleberry v. Gold Agency, Inc., 1971, 124 Ga.App. 694, 185 S.E.2d 557, partially overruled on other grounds, Coe & Payne Co. v. Wood-Mosaic Corp., 1973, 230 Ga. 58, 195 S.E.2d 399; Fulghum Industries, Inc. v. Walterboro Forest Products, Inc., 5 Cir., 1973, 477 F.2d 910. Since the "Broadway Joe's" investment is not the subject matter of this litigation, as a matter of Georgia law it is of no relevance to the determination of whether Cash "transacted any business" in Georgia within subsection (a) of the statute.

6. *See* the scholarly analysis of the Georgia long-arm statute, by now Chief Judge Eden-

field, in Marival, Inc. v. Planes, Inc., N.D. Ga., 1969, 302 F.Supp. 201; and Scott v. Crescent Tool Co., N.D.Ga., 1969, 296 F. Supp. 147. He presided below.

7. See Hull, Application of Long-Arm Statute to Foreign Corporation Not Doing Business in Georgia Committing Tortious Act Outside State Causing Injury Within State, 8 Ga. Bar J. 415 (1972).

8. Federal diversity courts had reached a contrary conclusion. Griffin v. Beech Aircraft Corp., 1971, 324 F.Supp. 1284; Scott v. Crescent Tool Co., N.D.Ga., 1969, 296 F. Supp. 147.

In Coe & Payne Co. v. Wood-Mosaic Corp., 1972, 125 Ga.App. 845, 189 S.E.2d 459, the Georgia Court of Appeals considered the applicability of the long-arm statute to certain contractual and tortious activities which occurred during 1969. It held that subsection (c) was inapplicable since it was not intended to have retroactive effect. The Court of Appeals further reaffirmed its earlier holdings that subsection (b) did not cover extraterritorial tortious conduct causing injury in Georgia.

The Supreme Court of Georgia granted certiorari. The Supreme Court while taking note of the Court of Appeals holding on the non-retroactivity of subsection (c), did not purport to pass on that issue. Instead it reversed the lower court's construction of subsection (b) expressly adopting the Illinois rule of Gray v. American Radiator Corp., 1961, 22 Ill.2d 432, 176 N.E.2d 761, to the effect that

> "a 'tortious act' is a composite of both negligence and damage, and if damage occurred within the state then the tortious act occurred within the state within the meaning of subsection (b) of the Long Arm Statute."

230 Ga. at 60, 195 S.E.2d at 400–401.

The Court further observed that

> "In adopting the Illinois Rule, we are impressed by the protective policy for this State's citizens enunciated so well in the following quote from Nelson v. Miller, 11 Ill.2d 378, 384, 143 N.E.2d 673 (1957): 'The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise in-

cur obligations to, those within the ambit of the State's legitimate protective policy.' "

230 Ga. at 61, 195 S.E.2d at 401.

Since the conduct here in issue occurred during 1969, the parties rely solely on subsection (b). Accordingly, our holding is narrowly limited to the application of subsection (b) (tortious act within) to conduct which occurs prior to July 1, 1970, the effective date of subsection (c) (act without/tortious injury within).

■ The District Court recognized that "[f]raud and deceit in the inducement to contract are clearly torts and plaintiff has alleged that defendant committed such acts." It found subsection (b) of the long-arm statute inapplicable, however, primarily on the grounds that Thorington sought the contractual remedy of rescission coupled with punitive damages as relief. That goes only to remedy, and dismissal because of the prayer for relief cuts off a plaintiff in a non-default situation from getting whatever relief the facts entitled him to.[9] In the federal diversity forum, a request for a possibly inappropriate remedy in the pleadings, should not be held to vitiate a proper state law cause of action.

In its expansive interpretation of subsection (b) in *Coe & Payne,* the Georgia Supreme Court held that long-arm jurisdiction exists over a non-resident whose extraterritorial tortious conduct causes injury within Georgia. That is precisely what Thorington has alleged happened here.

Both in Georgia[10] and elsewhere[11] for purposes of due process, a non-resident

---

9. F.R.Civ.P. 54(c) provides:

"* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

See, e. g., Equity Capital Co. v. Sponder, 5 Cir., 1969, 414 F.2d 317; Williams v. United States, 5 Cir., 1968, 405 F.2d 234; Molnar v. Gulfcoast Transit Co., 5 Cir., 1967, 371 F.2d 639; Burton v. State Farm Mutual

Automobile Ins. Co., 5 Cir., 1964, 335 F.2d 317; South Falls Corp. v. Rochelle, 5 Cir., 1964, 329 F.2d 611; Smoot v. State Farm Mutual Automobile Ins. Co., 5 Cir., 1962, 299 F.2d 525.

10. See Coe & Payne Co. v. Wood-Mosaic Corp., 1973, 230 Ga. 58, 195 S.E.2d 399; Griffin v. Beech Aircraft Corp., *supra*; Scott v. Crescent Tool Co., *supra*.

11. Gray v. American Radiator, *supra*; Jetco Electronic Industry v. Gardiner, 5 Cir., 1973,

who sends a defective product into the forum state or for that matter who simply places the product in the stream of commerce with reason to anticipate that it may find its way into the forum state may well be amendable to service of process if as a matter of state policy the applicable long-arm statute undertakes to go that far.

We see no reason why the same principle is not equally applicable when a non-resident sends material misrepresentations into the forum state with the intention that they be relied upon and where they are in fact relied upon by a resident of the forum state to his detriment. Unlike many of the stream of commerce products liability cases in which the non-resident defendant merely had reason to anticipate that the product would enter the forum state, Cash, in a complaint that fully meets F.R.Civ.P. 8(a), is alleged to have personally transmitted the misrepresentations into Georgia either by mail or telephone, or both.

Although in our *Erie* quest our sights are on Georgia alone, we think the Georgia courts would agree with the analysis of the First Circuit in Murphy v. Erwin-Wasy, Inc., 1972, 460 F.2d 661 in its application of a similarly worded Massachusetts long-arm statute[12] to corresponding facts.

"We believe that the same is true of the mailing of a fraudulent misrepresentation into a state. We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into

that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger.

. . . Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has for jurisdictional purposes, acted within that state."

460 F.2d at 664. Cf. Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, 5 Cir., 1961, 287 F.2d 66.

Thorington has satisfied both subsection (b) of the Georgia long-arm statute and the minimum contacts requirement of the due process clause. By sending material misrepresentations to Appellant in Georgia with the evident intention that they there be relied upon and by further mailing the contract in question into Georgia for execution, Cash "purposely avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 1958, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298.[13]

■ We do not determine whether Cash's contacts with Georgia would be sufficient to satisfy the seemingly more restrictive requirements of subsection (c)[14] (conduct without/tortious injury within—post-1970) since we are *Erie*-bound by the Georgia Court of Appeals undisturbed ruling in *Coe & Payne* that subsection (c) does not apply retroactively.

Reversed and remanded.

---

473 F.2d 1228 (Texas long-arm statute); Eyerly Aircraft Co. v. Killian, 5 Cir., 1969, 414 F.2d 591; Coulter v. Sears & Roebuck Co., 5 Cir., 1970, 426 F.2d 1315.

12. M.G.L.A. Ch. 223A, § 3(c) "causing tortious injury by an act or omission in this commonwealth * * *".

13. We necessarily express no opinion on the merits of this controversy.

14. See *Hull*, note 7, *supra*, at 422–27.