ATLANTA COLISEUM, INC. and
Atlanta Hockey, Inc.

v.

CARLING BREWING COMPANY, INC.
and Carling O'Keefe, Ltd.

Civ. No. C75–1776A.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 16, 1976.

S. Phillip Heiner, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiffs.

Hugh Gibert, David L. Ross, Haas, Holland, Levinson & Gibert, Atlanta, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

This action for breach of contract and for wrongful interference with existing and prospective business relationships is before the court on Carling O'Keefe, Ltd.'s [hereinafter referred to as "O'Keefe"] motion to dismiss and to quash service of process. O'Keefe is the parent corporation of the defendant Carling Brewing Co. owning 100% of its stock.[1] Plaintiffs sue in two counts, first against Carling Brewing for the breach of an alleged contract with the several corporations making up the "Omni

1. At the time of the alleged contract, O'Keefe owned 99.6% of Carling Brewing's stock.

Group" whereby Carling Brewing was to sponsor, on both radio and television and at the Omni, Atlanta Hawks and Atlanta Flames games and to have other advertising rights; second, against O'Keefe for alleged malicious interference with the business relationship between plaintiffs and Carling Brewing by allegedly causing Carling Brewing to breach its alleged contract with plaintiffs.

O'Keefe contends that personal jurisdiction over it could be secured, if at all, only by Ga.Code Ann. § 24–113.1(c) of the Georgia Long-Arm Statute, and it further contends that jurisdiction was not proper under that subsection because O'Keefe did not regularly do or solicit business or "engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered" in Georgia as required by § 24–113.1(c). Plaintiffs contend that jurisdiction is proper under § 24–113.1(a) and (c). Plaintiffs argue that earlier decisions holding that subsection (a) is limited to contract actions[2] are no longer viable and that since O'Keefe transacted business in this state and since the tort alleged against it is related to that transaction of business, jurisdiction under subsection (a) is proper. Plaintiffs also contend that O'Keefe qualifies under the above-noted requirements for jurisdiction under subsection (c) both as a result of its own activities in this state and as a result of its alleged close supervision and control over the activities of its subsidiary, Carling Brewing, which admittedly has sufficient contacts with this state.

█ It is undisputed that O'Keefe took over all of the advertising and marketing functions of Carling Brewing, including such functions in Georgia, and that as a result of this, employees of O'Keefe came to Atlanta to negotiate a renewal and extension of Carling Brewing's sponsorship contract with the plaintiffs.[3] An agreement was allegedly reached between the parties and performance was allegedly begun under its terms even though the formal written agreement was never signed by the parties. After the written form of this contract was submitted to O'Keefe and Carling Brewing, plaintiffs were notified that Carling would terminate its relationship with them on September 30, 1975, the end of the initial three year contract which the alleged new contract was to renew and extend. For the purposes of this motion, this court need not determine whether there exists a valid, binding contract between plaintiffs and defendants since that is a prime issue going to the merits of the case; however, from the facts established thus far, plaintiffs have established a prima facie cause of action, and this is all that is required at this stage of the proceeding. See *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1973).

In *Scott v. Crescent Tool Co.,* 296 F.Supp. 147 (N.D.Ga.1968), it was held that subsection (a) of the long-arm statute was limited to contract actions arising out of the transaction of business in the state because tort actions were covered by subsection (b). *Scott* was the initial decision interpreting the long-arm statute, and the holding was made in the absence of any definitive rulings by the Georgia courts. *Scott* further held that the liberal "Illinois rule" would be applied to subsection (b) so that its provision for "a tortious act within this State" would also encompass causes of action arising from acts occurring outside the state which cause tortious injury within the state.

---

**2.** See *Scott v. Crescent Tool Co.,* 296 F.Supp. 147 (N.D.Ga.1968). *See also Griffin v. Air South, Inc.,* 324 F.Supp. 1284 (N.D.Ga.1971).

**3.** O'Keefe contends that Wilmat Tennyson, who at the time was president of both O'Keefe and Carling Brewing, came to Atlanta and negotiated solely as president of Carling Brewing. Whether this is true or not, plaintiffs have established that James Faszholz was an employee of O'Keefe and he was instrumental in the negotiations of the alleged contract. Plaintiffs have also shown other extensive involvement of O'Keefe in its dealings with plaintiffs concerning the negotiation of the contract and the decision to terminate its sponsorship of the Hawks and Flames.

Under the holding in *Scott* with respect to the application of subsection (b), the use of subsection (a) with respect to torts would have been redundant and unnecessary.[4] Subsequent to this decision, the Georgia Court of Appeals had an opportunity to consider the scope of subsection (b), and it held that one who committed a tortious act outside Georgia which caused injury within Georgia could not be reached by subsection (b), choosing the New York rule over the Illinois rule chosen by *Scott*. *Castleberry v. Gold Agency, Inc.*, 124 Ga.App. 694 (1971); *O'Neal Steel, Inc. v. Smith*, 120 Ga.App. 106, 169 S.E.2d 827, *dismissed as moot*, 225 Ga. 778, 171 S.E.2d 519 (1969). Before the supreme court had an opportunity to rule on the interpretation of subsection (b), the Georgia General Assembly re-enacted § 24–113.1, adding subsection (c) which specifically provided for jurisdiction over one who commits a tortious injury in the state caused by an act or omission outside the state provided that certain specified contacts existed between the defendant and the state. In *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973), the Georgia Supreme Court had its first occasion to interpret subsection (b) in light of the court of appeals decisions limiting its scope to tortious acts occurring within this state. *Coe & Payne* was decided after the enactment of subsection (c) but dealt with a case where the cause of action arose prior to its effective date. The supreme court in *Coe & Payne* adopted the Illinois rule as the court in *Scott* had and thus held that subsection (b) applied to secure jurisdiction over persons or corporations who committed acts without the state which caused tortious injury within the state. In doing so, it is clear that such a ruling would have been applied in the earlier court of appeals cases predating the enactment of subsection (c) had the opportunity arisen and that it adopted the Illinois rule not as a stopgap measure to cover occurrences prior to the effective date of subsection (c) but as a "protective policy for this State's citizens" so that such citizens could seek redress in Georgia courts limited only by the parameters of due process.

██ As noted above, the plaintiffs claim that jurisdiction is proper pursuant to subsections (a) and (c) of the long-arm statute. While there is a certain amount of appeal to plaintiffs' assertion that subsection (a) should not be limited to contract actions, and there is strong argument for such assertion in light of the Georgia Supreme Court statement in *Davis Metals, Inc. v. Allen*, 230 Ga. 623, 625, 198 S.E.2d 285, 287 (1973), that

[u]nder our Long Arm Statute jurisdiction over a nonresident exists on the basis of transacting business in this state if the non-resident has purposefully *done some act or consummated some transaction* in this state, if the cause of action arises from or *is connected* with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

(emphasis supplied); this court is of the opinion that it does not have to rule that subsection (a) applies to tort actions in light of the decision by this court in *Thornton v. Toyota Motor Sales U.S.A., Inc.*, 397 F.Supp. 476 (N.D.Ga.1975). *Toyota* held that the Illinois rule as enunciated in *Coe & Payne* was still applicable under subsection (b) and that this application rendered subsection (c) superfluous. This decision has been followed in *Southwire Co. v. Pepper*, Civil No. C75–31N (N.D.Ga., Oct. 29, 1975), and was acknowledged in *Freeman v. Motor Convoy, Inc.*, 409 F.Supp. 1100 (N.D.Ga. 1975). Prior to the decision in *Toyota, Harris v. North American Rockwell Corp.*, 372 F.Supp. 958 (N.D.Ga.1974), held that the situation dealt with in *Coe & Payne* was now controlled by subsection (c). The Fifth

4. If subsection (b) had been interpreted more narrowly, as the Georgia Courts of Appeals subsequently interpreted it, then the use of subsection (a) for tort actions would not have necessarily been redundant and unnecessary.

**256**

Circuit implicitly agreed with this holding even though it did not cite *Harris* in *Thorington v. Cash,* 494 F.2d 582 (5th Cir. 1974). *Thorington* dealt with a factual situation where the tortious activity occurred prior to the effective date of subsection (c) and stated that its decision "is narrowly limited to the application of subsection (b) (tortious act within) to conduct which occurs prior to July 1, 1970, the effective date of subsection (c) (act without/tortious injury within)." 494 F.2d at 586. Neither *Harris* nor *Thorington* considered any Georgia decisions subsequent to the effective date of subsection (c), and this was noted by the court in *Toyota* in its ruling that the *Coe & Payne* doctrine remained viable after the effective date of subsection (c). 397 F.Supp. at 480, n.3. No case has been found where the Georgia Supreme Court has had the opportunity to reaffirm its rule in *Coe & Payne* subsequent to the effective date of subsection (c); however, several court of appeals decisions have subsequently cited *Coe & Payne* for its liberal and expansive interpretation of the long-arm statute. *See Greenfield v. Portman,* 136 Ga.App. 541, 221 S.E.2d 704 (1975); *Delta Equities Inc. v. Larwin Mortgage Investors,* 133 Ga.App. 382, 211 S.E.2d 9 (1974); *Davis v. Haupt Bros. Gas Co.,* 131 Ga.App. 628, 206 S.E.2d 598 (1974); *Lincoln Land Co. v. Palfery,* 130 Ga.App. 407, 413, 203 S.E.2d 597 (1973). In *Lincoln Land,* the court of appeals dealt with a case based in part on fraud, some of which occurred prior to the effective date of subsection (c) and some of which occurred subsequent thereto, and the court held jurisdiction proper under the long-arm statute, stating:

> Nor (and this particularly relates to the individual defendants) is it necessary that they participated in the purchase and sale of lots while personally present *in Georgia,* since Georgia has adopted the Illinois rule that the tortious act is a composite of both negligence and damage, and where the damage occurs within the state, although caused by an act committed outside the state, the jurisdiction attaches. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 195 S.E.2d 399.

130 Ga.App. at 413, 203 S.E.2d at 604. This decision certainly adds much support to the holding in *Toyota* that the *Coe & Payne* doctrine is still applicable and that it was not modified by the enactment of subsection (c). In light of these subsequent decisions by the Georgia Court of Appeals, this court holds that subsection (b) still provides a basis for securing jurisdiction over one who commits an act outside the state which causes tortious injury within the state under the doctrine enunciated by *Coe & Payne.* As noted by the Fifth Circuit in *Thorington,* the federal courts' duty in diversity cases is to determine how the Georgia courts would rule on this matter. 494 F.2d at 584.

 For the foregoing reasons, this court is of the opinion that personal jurisdiction over O'Keefe under subsection (b) of the long-arm statute is proper. There is no question but that O'Keefe's handling of marketing and advertising for Carling Brewing in Georgia and O'Keefe's participation in the negotiation of the contract in question is sufficient to satisfy due process requirements. The very contract it negotiated provides the basis for this action. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973); *Stanley v. Local 926 of the International Union of Operating Engineers,* 354 F.Supp. 1267 (N.D.Ga.1973).

Accordingly, the motion of O'Keefe to dismiss this action for lack of personal jurisdiction and to quash service of process is DENIED.