**PROCESS CONTROL CORPORATION**

v.

**WITHERUP FABRICATION AND ERECTION INC.**

Civ. No. C77–233A.

United States District Court, N. D. Georgia, Atlanta Division.

Nov. 14, 1977.

H. Fred Gober, Arnall, Golden & Gregory, Atlanta, Ga., for plaintiff.

Sidney F. Wheeler, J. M. Hudgins, IV, Long, Weinberg, Ansley & Wheeler, Edward W. Killorin, Michael V. Elsberry, Gambrell, Russell, Killorin & Forbes, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

This libel action brought by plaintiff Process Control Corporation [hereinafter "Process Control"] is predicated upon the contents of a letter to the plaintiff signed by Mr. William E. Bell, Comptroller of the defendant, Witherup Fabrication and Erection Inc. [hereinafter "Witherup"] dated December 29, 1976, a copy of which was allegedly sent by defendant to one of plaintiff's customers and to an attorney. Defendant Witherup is a Pennsylvania corporation, and the letter in question was apparently drafted and mailed in Pennsylvania to be delivered to the plaintiff, Process Control, at an Atlanta address. Plaintiff Process Control is a Georgia corporation, and subject matter jurisdiction is based on diversity of citizenship. This action is presently before the court on the defendant's motion for a preliminary hearing on its defense of lack of personal jurisdiction or, in the alternative, for summary judgment.

Whether there is merit to the nonresident defendant's contention that this court lacks personal jurisdiction over it depends upon how this court applies the Georgia long-arm statute, Ga.Code Ann. § 24–113.1. In pertinent part, this state provides:

A court of this State may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

. . . . .

(b) Commits a tortious act or omission within this State, *except as to a cause of action for defamation of character arising from the act*; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State.

(Emphasis added.) Notwithstanding that this is an action in tort for libel and that the actionable "tortious act," if any, occurred in Georgia,[1] defendant argues that the defamation exemption of subsection (b) applies to prevent this court from obtaining jurisdiction. Thus, defendant apparently contends that the defamation exemption in subsection (b) operates to exclude jurisdiction over nonresidents in all defamation cases where the "tortious act" occurs within Georgia despite any other contacts the nonresident defendant may have with Georgia. Similarly, defendant argues that although this action may involve tortious injury within Georgia caused by an act or omission outside Georgia, where the tortfeasor is engaged in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Georgia under subsection (c), the defamation exemption of subsection (b) also must apply to any such defamation action falling within subsection (c). To support these contentions, defendant relies primarily upon *A.B.R. Metals & Services, Inc. v. Astralloy-Vulcan Co.*, Civil No. 76–298A (N.D.Ga. Aug. 27, 1976) (Edenfield, J.).

The court in *Astralloy-Vulcan*, however, reached a contrary conclusion as to the proper interpretation of subsections (b) and (c) in defamation actions from the interpretation proffered in this court's prior decision in *Southard v. Forbes, Inc.*, Civil No. 74–1984A (N.D.Ga. Mar. 25, 1975) (O'Kelley, J.), which held that subsection (c) of the Georgia long-arm statute does, in fact, give Georgia courts jurisdiction over nonresidents in defamation cases where an act occurring outside the state causes tortious injury within the state, *if the nonresident defendant also has certain minimal contacts* with the state. In rejecting the *Southard* holding, the court in *Astralloy-Vulcan* reasoned:

With all due respect, this court feels that the conclusion reached in *Southard* leads to an anomalous result which the legislature could not have intended: jurisdiction over a nonresident could be secured under subsection (c) where defamatory material was published *outside* Georgia, providing the nonresident defendant had other minimal contacts with the state, but could not be secured when all the nonresident's acts leading up to a defamation occurred *in* Georgia, despite any other contacts with the state, because of subsection (b)'s clear exception for . . . in-state defamation actions. Thus, this exclusion must similarly be applied in situations where the defamatory matter was published outside of Georgia.

*Astralloy-Vulcan, supra*, at 3. The court in *Astralloy-Vulcan*, however, has apparently misread the original ruling in *Southard* under which there is no such anomaly.

Because the "tortious act" in a defamation action usually occurs at the place of plaintiff's residence where the circulation and distribution of the libelous material is made, the *Southard* court reasoned that where jurisdiction under the Georgia long-arm statute is to be predicated upon the commission of a "tortious act" within Georgia, to comply with well-known Fifth Circuit decisions holding that a "tortious act" constituting a defamation, by itself, is insufficient to vest a state with jurisdiction over a nonresident defendant,[2] an exception for defamation actions had to be written into the statute. Thus, under the *Southard* court's interpretation of the words "except as to a cause of action for defamation of character arising from the [tortious] act" contained in subsection (b) of the Georgia long-arm statute,

[t]he legislature was stating legislatively, as the [Fifth Circuit] cases had stated constitutionally, that the tortious act of

---

1. A "tortious act" is "an act of such a character as to subject the actor to liability" under tort principles. *See* Restatement of Torts § 870, Comment *a* (1939). Thus, the "tortious act" in a defamation action occurs at the place where the libelous material is delivered and circulated.

2. *See New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966); *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir. 1964).

defamation alone was insufficient to grant jurisdiction over a nonresident. *Southard, supra* at 6. Because the precise holding in *Southard* was that there was personal jurisdiction over the defendant under subsection (c), because the subsection (b) exemption was inapplicable to subsection (c) defamation actions, the court in *Astralloy-Vulcan* apparently read the *Southard* court's interpretation of the subsection (b) exemption, quoted above, narrowly, to mean only that the exemption in subsection (b) did not carry over into subsection (c). However, a proper reading of the *Southard* court would interpret subsection (b) of the Georgia long-arm statute to mean that Georgia courts may exercise personal jurisdiction over any nonresident who commits a tortious act or omission within Georgia, "except as to a cause of action for defamation of character arising from the act," in which case the nonresident must also have sufficient minimum contacts with Georgia other than the contacts which arise from the acts constituting the defamation.

This reading of the *Southard* court's interpretation of the subsection (b) exemption comports with this court's prior holding that in the absence of state cases defining the scope of the Georgia long-arm statute, this court will construe it broadly and inclusively:

> [A]bsent state cases on this subject, we hold the Georgia long-arm statute to be coterminous with the due process clause. The broad language of the Georgia statute, expanding notions of jurisdiction, and the experience in other jurisdictions with similar statutes, indicates, that an expansive reading should be given to § 24–113.1. *See, e. g., Buckley v. New York Times Co.*, 338 F.2d 470, 472–473 (5th Cir. 1964); *Orton v. Woods Oil & Gas Co.*, 249 F.2d 198, 200, 202 (7th Cir. 1957), construing the Illinois long-arm statute . . . which is almost identical to Georgia's statute.

*Marival, Inc. v. Planes, Inc.*, 302 F.Supp. 201 at 205 (N.D.Ga.1969) (Edenfield, J.).

■ Finally, this court notes that by holding that the subsection (b) exemption *should not* be read to have the far-reaching effect of excluding jurisdiction over nonresidents in all defamation cases *despite a nonresident's additional contacts with Georgia*, this court is following the policy conclusion recognized in *Southard* that to require Georgia defamation victims to resort to possibly distant forums for redress would be unduly burdensome:

> One of the most basic tenets of defendant's argument, and one with which this court strongly disagrees, is the contention that subsection (b) was enacted with the plain meaning and intention that no Georgia resident would even be able to sue any publisher for defamation of his character in any court of law in Georgia under any circumstances, no matter how significant that publisher's contacts might be with this state so long as that publisher is a nonresident within the meaning of Ga.Code Ann. § 24.117. While such an interpretation would not completely bar a defamed plaintiff from seeking redress, it would certainly place an undue hardship on such plaintiff, forcing him to travel to some possibly distant forum, which forum would generally be inconvenient with respect to plaintiff's evidence, and the forum would be unfamiliar with his reputation and the possible damage done by the libel . . . . Such an interpretation is patently unreasonable to this court . . . .

*Southard, supra* at 3–4.

■ Because, for the above reasons, under the allegations in the complaint this court is not precluded from acquiring personal jurisdiction over the nonresident defendant under Ga.Code Ann. § 24–113.1(b) or (c) should the defendant have sufficient additional contacts with Georgia, and because plaintiff contends that defendant does have the required contacts with Georgia and that this will be established through discovery, the court concludes that defendant's motion grounded on a lack of personal jurisdiction is inappropriate at this time and is, therefore, denied.

■ The defendant has also moved for summary judgment on the ground that

there has been no publication of the allegedly libelous letter to any third parties. Defendant relies on the affidavit of Mr. William Bell, the Comptroller of the defendant who was apparently responsible for the mailing of the letter in question, which states that, although his letter indicated that two copies were sent, "[o]nly the original of the letter was mailed, and that was mailed to . . . the plaintiff" and "[o]ther than for use in litigation and in anticipation of litigation, no copy or copies of such letter were delivered to any person, corporation, or other entity." Although summary judgment should ordinarily be rendered where a supporting affidavit cuts through allegations in pleadings which are supported only by unverified exhibits, the court will reserve ruling on the motion for summary judgment pending final resolution of the jurisdictional issue. *See Davis v. Howard*, 561 F.2d 565 (5th Cir. 1977).

IT IS SO ORDERED this 11th day of November, 1977.