**Walter T. SPELSBERG, Plaintiff,**

v.

**LaVerne SWEENEY, Defendant.**

**Civ. A. No. CV180–212.**

United States District Court,
S. D. Georgia,
Augusta Division.

May 29, 1981.

DeWitt R. Dent, Augusta, Ga., for plaintiff.

Douglas D. Batchelor, Jr., Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

In this action sounding in tort for defamation of character, plaintiff avers that:

Defendant did on or about 29 July 1980 falsely and maliciously make, and publish in this jurisdiction in writing a defamatory allegation that Plaintiff was "... a closet-homosexual ...," thereby tending to injure his reputation and exposing him to public hatred, contempt or ridicule.

Presently before the Court is defendant's application for preliminary hearing on the following defenses: (1) a Rule 12(b)(2) defense that the Court lacks *in personam* jurisdiction over defendant; and (2) a Rule 12(b)(5) defense that service of process was insufficient. In lieu of a hearing, the Court may resolve these matters upon consideration of the pertinent affidavits and exhibits on file. *See Edwards v. Associated Press*, 512 F.2d 258, 268 n.8 (5th Cir. 1975). A review of these materials reveals the following facts.

Defendant is an attorney at law, licensed to practice in the State of West Virginia with his office in West Virginia. Another West Virginia attorney referred a Mrs. Gerry Tilghman, plaintiff's former wife, to defendant to represent her in the collection of past due amounts from plaintiff. Defendant undertook this representation and obtained a judgment against plaintiff in Randolph County, West Virginia. Thereafter, plaintiff moved to Georgia, and defendant contacted an attorney in Augusta, Georgia, Vincent M. Davison, Jr., to represent Mrs. Tilghman in seeking to recover on the West Virginia judgment. Defendant was not involved with Mrs. Tilghman's subsequent legal representation in Georgia.

By letter dated May 20, 1980, (following the aforementioned events) one Captain Chuck R. Pardue, Office of the Staff Judge Advocate, United States Army Center Fort Gordon, informed defendant of a proposal to settle the litigation between plaintiff and his former wife. Defendant responded to Captain Pardue by letter dated June 18, 1980, stating that Mrs. Tilghman was unwilling to accept the settlement proposal and that, in the future, Captain Pardue should direct all correspondence to Mrs. Tilghman's Georgia lawyer. The letter also states in pertinent part: "[Mrs. Tilghman] advises that ... she ... was (unbeknownst to her) living with a closet-homosexual." A copy of this letter was sent to Mrs. Tilghman's attorney in Augusta, Georgia, on July 29, 1980.

According to defendant's uncontroverted affidavit, defendant was involved in a matter that was connected with Georgia on only one other occasion: referral of a West Virginia resident to a Georgia attorney regarding collection of a Georgia judgment against a Georgia resident. This matter was unrelated to the litigation involving plaintiff. It appears that defendant has had no other contacts with the State of Georgia.

■ In deciding the personal jurisdiction issue raised by defendant in this diversity action, the Court is bound by the Georgia long-arm statute and state appellate decisions interpreting the statute. *See Gold Kist, Inc. v. Baskin-Robbins Ice Cream*, 623 F.2d 375, 377 (5th Cir. 1980); *Attwell v. LaSalle National Bank*, 607 F.2d 1157 (5th Cir. 1979). The Georgia long-arm statute provides:

A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

(a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State ....

Ga.Code Ann. § 24–113.1 (1971). Georgia appellate courts construing this statute are mindful "that the Long Arm Statute contemplates that jurisdiction shall be exercised over non-resident parties to the maximum extent permitted by procedural due process." *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 60, 195 S.E.2d 399 (1974).

 Defendant argues that the defamation exemption of subsection (b) proscribes the exercise of extraterritorial *in personam* jurisdiction in this action. Section 24–113.1(b) "confer[s] jurisdiction over a nonresident who [purposefully] conducts some activity in or with [Georgia] ... and as a result of that activity a Georgia resident suffers injury here even though the actual act or omission occurred outside this forum."[1] *Shellenberger v. Tanner*, 138 Ga.

---

1. Initially, subsection (b) was interpreted by the Georgia appellate courts in accordance with the so-called New York rule: in order for jurisdiction to attach, both the tortious act or omission and the injury must have occurred in Georgia. *Shellenberger v. Tanner*, 138 Ga.App. 399, 406, 227 S.E.2d 266 (1976); *see Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253, 255 (N.D.Ga.1976). The Georgia Supreme Court later rejected this view, *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973), and instead adopted the so-called Illinois rule: jurisdiction may attach under subsection (b) when an injury occurs in Georgia resulting from a tortious act or omission outside of Georgia.

While the *Coe* court judicially engrafted an "act without/injury within" jurisdictional rule onto subsection (b), the Georgia Legislature enacted a version of the same rule. Subsection (c), enacted in 1970, confers personal jurisdiction over a nonresident tortfeasor who causes injury within the state by an act or omission outside the state if he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." Thus, a rule conferring jurisdiction over nonresident tortfeasors committing tortious acts or omissions outside the state which cause injury within the state exists judicially under subsection (b) and legislatively under subsection (c). Judge O'Kelley concluded that the enactment of subsection (c) did not modify the Georgia appellate court extension of subsection (b) to provide "a basis for securing jurisdiction over one who commits an act outside the state which causes injury within the

state." *Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253, 256 (1976).

Thereafter, the Georgia Court of Appeals undertook a comparative analysis of subsection (b) in light of subsections (c) and (a). *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976). With respect to subsection (c), the *Shellenberger* court noted that a nonresident tortfeasor may be subject to suit in Georgia:

if, due to some purposeful activity here, he causes a tortious injury to a resident and if *in addition* he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods sued or consumed or service rendered in this State."

*Id.* at 406, 227 S.E.2d 266 (emphasis in original). Judge Deen emphasized that it is reasonable, under "traditional notions of fair play and substantial justice," to subject a nonresident tortfeasor to the jurisdiction of the Georgia courts when he has one of the additional "contacts" with the state listed in subsection (c). *Id.* at 405–406, 227 S.E.2d 266. Since jurisdiction under subsection (b) should be no less reasonable and no less in accordance with "traditional notions of fair play and substantial justice," than jurisdiction under subsection (c), the *Shellenberger* court formulated the following test for subsection (b) *in personam* jurisdiction:

1. The nonresident must purposely avail himself of the privilege of doing some act or consummating some transaction with or in the forum.
2. The plaintiff must have a legal cause of action.

App. 399, 410, 227 S.E.2d 266 (1976). *See Clarkson Power Flow, Inc. v. Thompson,* 244 Ga. 300, 302, 260 S.E.2d 9 (1979) ("[T]here is no essential difference between subsections (b) and (c)."); *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 61, 195 S.E.2d 399 (1973) ("[S]ubsection (b) . . . confers jurisdiction in the situation where the negligence occurred outside the State of Georgia and the damage resulting therefrom occurred inside the State of Georgia."). In a defamation action, the "tortious act" occurs in the state where the alleged libelous materials is distributed. *Process Control Corp. v. Witherup Fabrication & Erection, Inc.,* 439 F.Supp. 1284, 1286 n.1 (N.D.Ga.1977); *see* Ga.Code Ann. § 105-701 (1968). Here, the alleged libelous letter was delivered and circulated in State of Georgia; thus, the "tortious act" of defamation occurred in Georgia. Clearly, then, under the express exceptive language of subsection (b), defendant's act of distributing the two letters at issue in Georgia may not serve as a basis for the exercise of personal jurisdiction over the nonresident defendant.

■ While the defamatory act itself may not confer *in personam* jurisdiction, a nonresident defendant in a defamation action may nonetheless be subject to process if other sufficient minimum contacts with the forum exist. As the Fifth Circuit commented in *Attwell, supra* : "For the tortious conduct to constitute a basis for the exercise of personal jurisdiction the conduct vesting jurisdiction must be an act or omission separate and apart from the . . . alleged defamatory behavior." 607 F.2d at 1161; *See Process Control Corp.,* 439

F.Supp. at 1287 ("Georgia courts may exercise personal jurisdiction over any nonresident who commits a tortious act or omission within Georgia, [except a defamation action], in which case the nonresident must also have sufficient minimum contacts with Georgia other than the contacts which arise from the acts constituting the defamation."). Accordingly, the pertinent inquiry in this case is whether the nonresident defendant "has established 'minimum contacts' in this state so that the exercise of jurisdiction is consistent with 'traditional notions of fair play and substantial justice'." *Clarkson Power Flow, Inc.,* 244 Ga. at 301, 260 S.E.2d 9.

Excluding the two letters distributed in Georgia, the only other contacts defendant has had with Georgia is the referral of two West Virginia residents to Georgia attorneys for representation in two distinct Georgia legal matters. While these contacts are clearly minimal, they may nevertheless present sufficient "minimum contacts," depending on "whether the 'quality and nature' of the defendant's activity is such that is 'reasonable' and 'fair' to require him to conduct his defense in [this] state." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

■ The Georgia long-arm statute prescribes certain contacts which are legislatively deemed adequate "minimum contacts" to confer extraterritorial jurisdiction. Subsection (a) confers *in personam* jurisdiction if the nonresident "transacts any business within this state." Assuming this jurisdiction generating event applies to actions

---

3. If the first two requirements are met, the exercise of jurisdiction over the nonresident must be reasonable.
*Swafford v. Avakian,* 581 F.2d 1224, 1226 (5th Cir. 1978) (citing *Shellenberger,* 138 Ga.App. at 407, 227 S.E.2d 266). Thus, the *Shellenberger* court rejected an implicit prior construction of subsection (b) that "a mere demonstration that an injury has occurred [in Georgia] due to an act or omission by a nonresident outside this forum does not necessarily show that the defendant had such "contact with Georgia to confer jurisdiction over him." 138 Ga.App. at 409, 227 S.E.2d 266.

In 1979, the Georgia Supreme Court seemingly eliminated any analytical distinction between subsections (b) and (c) in holding "that limitations similar to those present in subsection (c) are constitutionally mandated under subsection (b)." *Clarkson Power Flow, Inc. v. Thompson,* 244 Ga.App. 300, 311, 260 S.E.2d 9 (1979). Thus, it appears that to confer jurisdiction over a nonresident under subsection (b), the nonresident's purposeful activity in the forum must be of a nature similar to the "contacts" prescribed in subsection (c).

in tort, and not just actions in contract,[2] personal jurisdiction may exist under subsection (a):

> if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Davis Metals, Inc. v. Allen*, 230 Ga. 623, 625, 198 S.E.2d 285 (1973). Additionally, subsection (c) confers personal jurisdiction over a nonresident defendant tortfeasor who causes tortious injury within the state by an act or omission outside the state, if he: "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State. *See* note 1, *supra.*

█ Clearly, defendant's referral of two West Virginia residents to two Georgia attorneys does not constitute a regular solicitation of business or persistent course of conduct, etc., as prescribed in subsection (c). Furthermore, this limited connection with the State of Georgia cannot be termed a "transaction of business" within the state. In referring two persons to Georgia attorneys concerning Georgia legal matters and then ceasing any further involvement in those matters, defendant did not "purposefully avail[ ] [him]self of the privilege of conducting activities within the forum State [of Georgia]." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See also Shellenberger v. Tanner,* 138 Ga.App. at 409, 227 S.E.2d 266. Moreover, one of defendant's

two "contacts" is completely unrelated to plaintiff's present cause of action. *See Davis Metals,* 230 Ga. at 625, 198 S.E.2d 285 (cause of action must arise from or be connected with nonresident's act or transaction within the state). Ultimately, however, leaving aside the statutory terminology, the "minimum contacts" test reduces to an analysis of fairness and reasonableness. As the Supreme Court stated in *Kulko, supra* :

> [T]he facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. We recognized that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."

436 U.S. at 92, 98 S.Ct. at 1696 (citations omitted).

In weighing the facts of this case, the balance of fairness and reasonableness falls in favor of defendant. At the outset of the events leading up to the present dispute, all relevant parties were residents of West Virginia. Defendant, as an attorney for Mrs. Tilghman, won a judgment against plaintiff in West Virginia. Plaintiff then left West Virginia for Georgia, and defendant's client, in seeking to recover on the West Virginia judgment, retained Georgia counsel upon referral by defendant. It is apparent, therefore, that any connection or "contact" defendant has with Georgia (which in some way is related to plaintiff's theory of relief in this case) is effectively the result of plaintiff's actions. Conceivably, plaintiff could have moved from West Virginia to any other state in the union and the same sequence of events would have occurred,

---

**2.** In *Scott v. Crescent Tool Co.*, 296 F.Supp. 147 (N.D.Ga.1968), Judge Edenfield concluded that subsection (a) "applies to matters in contract, not to those sounding in tort." *Id.* at 152. *See Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253, 255 (N.D.Ga.1976). Subsequently, the Fifth Circuit held "that the jurisdiction conferred by the long arm statute embraces all theories of relief 'related to' the jurisdiction generating event." *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1033 (5th Cir. 1976) (jurisdiction conferred under subsection (b) sufficient for con-

tract claim). Thus, it seems that if the jurisdiction generating event is the "transacting of business" within the state and the theory of relief (whether tort or contract) is related to such "transacting of business," then an appropriate action sounding either in tort or contract may be brought. *Cf. Hollingsworth v. Cunard Line Limited,* 152 Ga.App. 509, 263 S.E.2d 190 (1979) (personal jurisdiction over nonresident defendant in two count action based on breach of contract and fraud upheld under subsection (a)).

resulting in a similar connection between defendant and that state. To subject defendant to *in personam* jurisdiction on the basis of such a limited connection with the forum state would be unfair and unreasonable.

Accordingly, based upon the foregoing analysis, plaintiff's complaint is dismissed without prejudice for lack of *in personam* jurisdiction over defendant.